SOL COHN *v.* STATE (two cases).

CHARLES PERKINS and LEM HORTON *v.* STATE (three cases).

LEM HORTON *v.* STATE.

'(*Nashville.*    December Term, 1907.)'

1. **EVIDENCE.** Procured by unreasonable searches and seizures is admissible, when; application of constitutional provision.

The constitutional provision against unreasonable searches and seizures contemplates only searches and seizures made through governmental agencies, and under statutes attempting to authorize it, and has no bearing upon the unauthorized acts of private persons, or of petty officers of the law, and the evidence secured by the unlawful acts and trespasses of such persons is admissible against the accused.

Cases cited and approved: Adams v. New York, 192 U. S., 585; State v. Edwards, 51 W. Va., 220; Williams v. State, 100 Ga., 511; Chastang v. State, 83 Ala., 29; Shields v. State, 104 Ala., 35; State v. Pomeroy, 130 Mo., 489; Gindrat v. People, 138 Ill., 103; State v. Atkinson, 40 S. C., 363; State v. Griswold, 67 Conn., 290; State v. Nordstrom, 7 Wash., 506; Trask v. People, 151 Ill., 523; Siebert v. People, 143 Ill., 571; Commonwealth v. Welsh, 110 Mass., 359; Commonwealth v. Dana, 2 Metc. (Mass.), 239; Commonwealth v. Tibbetts, 157 Mass., 519; Legatt v. Tollervey, 14 East, 302; Jordan v. Lewis, 14 East, 306, note; State v. Flynn, 36 N. H., 64.

Case cited and distinguished: Boyd v. United States, 116 U. S., 616.

2. **SAME.** Same. Such evidence is not inadmissible as self-incriminating.

Evidence obtained by private persons or petty officers through trespasses and unreasonable searches and seizures is not on that

account inadmissible as being violation of the constitutional prohibition against compelling a person charged with a crime to incriminate himself.

Cases cited and approved:   Adams v. New York, 192 U. S., 585; Shields v. State, 104 Ala., 35; State v. Pomeroy, 130 Mo., 489; State v. Flynn, 36 N. H., 64.

3.  **SAME. Same. Same. Case in judgment.**
In a prosecution for the unlawful sale of liquor and cigarette paper on Sunday, deputy sheriffs testified that on a certain Sunday they ascended the stairway on the outside of the saloon of the principal defendant and made a peephole in the wall of the saloon, by removing some bricks and mortar, through which hole they could see into the barroom, and that, while they were watching through the hole, they saw defendants enter the barroom from the rear, followed by a crowd, and saw defendants sell both liquor and cigarette papers, and receive and register the money paid therefor, such evidence was not inadmissible as being obtained in violation of the constitutional provision inhibiting unreasonable searches and seizures, nor as being violative of the constitutional prohibition against compelling a party accused of crime to incriminate himself.

FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson County.—M. W. HART, Judge.

W. C. CHERRY, for plaintiffs in error.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

Cohn v. State.

MR. JUSTICE NEIL delivered the opinion of the Court.

In the first case against Sol Cohn, he was held under presentment, in the criminal court of Davidson county, for selling liquors on Sunday, and, in the second case, for selling cigarette papers, contrary to the statute applicable to such case. In each of the three cases against Charles Perkins and Lem Horton, they were likewise held for selling intoxicating liquors on Sunday. In the case brought against Lem Horton alone, he was held under presentment containing several counts; one for keeping cigarette papers in stock, another for selling cigarette papers, and another for giving away cigarette papers.

In all of the foregoing cases the plaintiffs in error were convicted on trial before the court, without the intervention of a jury, and appropriate punishment assessed against them. Thereupon they severally appealed to this court, and have here assigned errors.

The cases turn upon a single question, and therefore they were all heard together in this court.

The question arises on the admission of alleged illegal testimony in the court below. John Yeaman, a deputy sheriff of Davidson county, testified that, accompanied by his brother, Owen Yeaman, and Mr. Adkin, both being regular deputy sheriffs, he went to Cohn's place about 6 o'clock on Sunday morning, the 13th day of January, 1907, and mounted a stairway leading up by the side of the saloon, and, after they had reached a point about halfway up the stairway, they

stopped and removed some bricks from the wall, and the mortar along with them, being careful to draw the bricks and the mortar out upon the stairway so as to give no indication, in the saloon, of what they were doing on the stairway; that the hole thus made was smaller on the inside of the saloon than on the outside; that, having made this peephole, they sat and watched occurrences in the saloon; that they saw Lem Horton and Charles Perkins enter the barroom by a rear door, and they were soon followed by a crowd; that witness and those who were with him watched the persons inside for an hour; that Lem Horton and Charles Perkins sold, and received money for, a great many drinks of whiskey and beer, certainly more than three; that they saw Lem Horton reach under the bar and take out a large box of cigarette papers and sell a book of them to a customer, one Henry Ewing; that he rang up this sale of the cigarette papers just as he did the drinks, in the cash register; that the witness and the others with him got the cigarette papers and the sale book and brought them to court. It was further testified that Horton and Perkins worked for Cohn.

The other witnesses present gave substantially the same testimony as that given by John Yeaman. At the close of the testimony of each witness, the plaintiffs in error, by their counsel, moved the court to strike out the entire testimony of each witness "because the same was inadmissible, and incompetent, because obtained illegally and contrary to the laws of the State,

Cohn v. State.

and the State and federal constitutions." This motion was overruled in the court below, and this action of the court is made the basis of the error assigned here.

It is insisted that the evidence thus obtained was in violation of the constitutional provision against unreasonable searches and seizures, and also violative of the constitutional inhibition against compelling a party, in a criminal case, to give testimony against himself.

We think the evidence was competent. The unreasonable search and seizure against which the constitutional provision was designed to operate was that made through governmental agency, and has no bearing upon the unauthorized acts of private persons, or of petty officers of the law. Nor has the inhibition against compelling a person charged with crime to incriminate himself any more bearing upon the present controversy, since the plaintiffs in error were not required to testify. Nor was any presumption indulged or permitted against them because of their silence, Nor were the plaintiffs in error required to produce any private papers that would so speak as to incriminate them. It is true that the act of Yeaman and his companions in making a hole in the wall and spying upon the inmates of the building was an unlawful one, for which they were subject to punishment. Still, although the evidence was thus procured, it would not be rejected by the court, if relevant to the issue. 4 Wigmore on Evidence, secs. 2183, 2264; 1 Greenleaf on Evidence, sec. 254a; 2 Elliott on Evidence, sec. 1013.

120 Tenn—5

Some illustrations from the cases will show the scope of the rule.

In the case of *State* v. *Edwards,* 51 W. Va., 220, 41 S. E., 429, 59 L. R. A., 465, it appeared that the prisoner was arrested for larceny, in obtaining money through a trick.    When arrested, along with certain good money found upon his person, there was found a supply of worthless bank notes.    The latter were offered as evidence on the trial, as a part of the testimony showing the trick that had been practiced upon the prosecutor. This was objected to on the ground that these papers were taken from the person of the prisoner illegally by the officer who arrested him.    Speaking to this point, the court said:

"One complete answer to this is that, if it was an illegal seizure, that is no objection to the use of the papers as evidence, they being proper evidence in the case in other respects, for the court can take no notice how they were obtained, whether lawfully or unlawfully, nor would it form a collateral issue to determine that question."

In *Williams* v. *State,* 100 Ga., 511, 28 S. E., 624, 39 L. R. A., 269, it appeared that a police officer devised the following plan to discover whether Sarah Williams was selling whisky in violation of law.    He gave to one Mose Lucas a silver quarter marked with a cross, and an empty half-pint whisky flask with a file on the neck, and to one Jeff Bunkley a silver 10-cent piece, marked with a cross on the head of the female figure

on the coin.    Both went in the direction of the house
of Sarah Williams, the accused.    In a few minutes
thereafter these two men came out of the back yard, and
Mose Lucas handed the officer the same bottle that had
been given to him, and in the same condition, except
that it was full of whisky.    The police officer then
called another officer, and the two entered the house
of Sarah Williams, and the officer put his hand in her
apron pocket, took out her purse, and found in it the
two pieces of marked money above referred to.    He
testified that the two pieces were the same that he had
marked and given to Lucas and Bunkley.    He then
searched her house and found a gallon jug of blackberry
wine and three bottles, two of them quart bottles and
one of them a half-gallon bottle.    One of the bottles
was nearly full of whisky, and another had only the
bottom covered with whisky, and a third, the half-gallon
bottle, was full of something that looked like whisky.
The officer had no search warrant to search either the
defendant or the house.    The jug of wine, the half-
gallon bottle of whisky, the quart bottle of whisky, part-
ly used, and the other bottle of whisky which contained
a little bit in the bottom of it, together with a tin fun-
nel, and the 25-cent and the 10-cent piece of silver
money, were tendered in evidence and permitted, over
the objection of the accused.    The objection was over-
ruled, the court saying:

"Irrespective of the many respectable authorities
above referred to, and speaking for ourselves, we are

satisfied that the contention of the accused that her
constitutional rights were infringed by the ruling of
the trial judge admitting the evidence complained of
ought not to be sustained.    As we understand it, the
main, if not the sole, purpose of our constitutional in-
hibitions against unreasonable searches and seizures,
was to place a salutary restriction upon the powers of
government.    That is to say, we believe the framers
of the constitution of the United States, and of this,
and other States, merely sought to provide against any
attempt, by legislation or otherwise, to authorize, justify
or declare lawful any unreasonable search or seizure.
This wise restriction was intended to operate upon legis-
lative bodies, so as to render ineffectual any effort to
legalize by statute what the people expressly stipulated
could in no event be made lawful, upon executives, so
that no law violative of this constitutional inhibition
should ever be enforced; and upon the judiciary, so as
to render it the duty of the courts to denounce as unlaw-
ful every unreasonable search and seizure, whether con-
fessedly without any color of authority, or sought to
be justified under the guise of legislative sanction.    For
the misconduct of private persons, acting upon their
individual responsibility and of their own volition, sure-
ly none of the three divisions of government is respon-
sible.    If an official, or a mere petty agent of the State,
exceeds or abuses the authority with which he is clothed,
he is to be deemed as acting, not for the State, but for
himself only; and therefore he alone, and not the State,

Cohn v. State.

should be held accountable for his acts.    If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of government can do is to afford the citizen such redress as is possible, and bring the wrongdoer to account for his unlawful conduct."

In *Chastang* v. *State,* 83 Ala., 29, 3 South., 304, a pistol found on searching a person was held admissible as evidence, regardless of the illegality of the search.    To the same effect is *Shields* v. *State,* 104 Ala., 35, 16 South., 85, 53 Am. St. Rep., 17.    In that case it was held that however unfair or illegal may be the method by which the evidence was obtained, yet it may be received, if the accused was not compelled to do any act to incriminate himself.    In that case it appeared that the prisoner was on trial for carrying concealed weapons, and it was permitted to be shown that a pistol was found concealed on the defendant's person, as the result of a forcible search by an officer.    The evidence was permitted to be received, although the search was unauthorized and unlawful.

In *State* v. *Pomeroy,* 130 Mo., 489, 32 S. W., 1002, it was held that it was not a violation of the constitutional provision, that no one shall be compelled to testify against himself in a criminal case, to introduce in evidence, in a prosecution for establishing a lottery, tickets, papers, etc., taken from the person and premises of the accused, even though they were obtained without authority of law.

In *Gindrat* v. *People,* 138 Ill., 103, 27 N. E., 1085, it was held that the fact that evidences of the commissions of a crime were found by a mere private detective, on an unauthorized search of a party's rooms, would not itself render the evidence incompetent against the party in whose possession the articles were found, if such evidence was otherwise competent. In that case it appeared that a party was under indictment for larceny of a diamond ring by substituting an imitation diamond in its place. The search above referred to by the private detective resulted in discovering cheap, imitation diamonds in the possession of the accused. It was held that the admission of these objects in evidence was not a violation of any constitutional right.

In *State* v. *Atkinson,* 40 S. C., 363, 18 S. E., 1021, 42 Am. St. Rep., 877, it was held that papers illegally obtained by searching the rooms of the accused during his absence was competent evidence against him on a trial for murder.

In *State* v. *Griswold,* 67 Conn., 290, 34 Atl., 1046, 33 L. R. A., 227, it appeared that a certain package was obtained by searching the prisoner's office during his absence; the search not being made under any warrant, but by consent of one Butler, the servant of the accused. This evidence was objected to on the ground that it was illegally obtained, because the servant had no right to consent to a search of the office. The court held that, even if the property had been taken from the possession

of defendant by trespass, that would be no valid objection to its admissibility.

In *State* v. *Nordstrom,* 7 Wash., 506, 35 Pac., 382, it was held that papers and things taken from the accused at the jail, on the usual search being made, might be admitted in evidence against him without any violation of the constitutional provisions against unreasonable search and seizures, or the provision against compulsory self-incrimination.

In *Trask* v. *People,* 151 Ill., 523, 38 N. E., 248, it was held that papers found in a room occupied by a person under indictment for larceny, while out on bail, which the officer took from the room in his absence, were admissible in evidence, even though thus unlawfully obtained.

In *Siebert* v. *People,* 143 Ill., 571, 32 N. E., 431, it appeared that a Pinkerton detective found certain letters in the room of the accused, which he obtained from the person in charge of them by representing that he was her friend. It was held that these letters were admissible in evidence, notwithstanding the manner in which they had been obtained.

In *Commonwealth* v. *Welsh,* 110 Mass., 359, it was held that, although an officer had been guilty of misconduct in his mode of serving a warrant, in breaking open a safe, on the refusal of the defendant to give up the key, and although he might be criminally liable for his act, yet this did not render the fact that intoxicating

liquors were found in the safe incompetent evidence in a prosecution for the selling of intoxicating liquors.

The foregoing are sufficient illustrations of the rule. The cases are very numerous, and could be cited in great numbers. We do not suppose any question would have been made but for the case of *Boyd* v. *United States,* 116 U. S., 616, 6 Sup. Ct., 524, 29 L. Ed., 746, referred to and quoted from extensively in the brief of counsel for plaintiffs in error. That case, however, is distinguished in the later case of *Adams* v. *New York,* 192 U. S., 585, 24 Sup. Ct., 372, 48 L. Ed., 575. In that case the court, after quoting with approval from the leading case of *Commonwealth* v. *Dana,* 2 Metc. (Mass.), 239 and *Commonwealth* v. *Tibbetts,* 157 Mass., 519, 32 N. E., 910, and citing most of the cases we have referred to, and approving the doctrine therein declared, held that the case of *Boyd* v. *United States* was not an authority to the contrary. In that case the following, from *Commonwealth* v. *Dana,* supra, was quoted with approval:

"Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence if they were pertinent to the issue, as they unquestionably were. When papers

are offered in evidence, the courts can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question. This point was decided in the cases of *Legatt* v. *Tollervey,* 14 East, 302, and *Jordan* v. *Lewis,* 14 East, 306, note, and we are entirely satisfied that the principle on which these cases were decided is sound and well established."

The following is also quoted with approval from *Commonwealth* v. *Tibbetts,* supra:

"But two points have been argued: The first is that the criminatory articles and letters found by the officer in the defendant's possession were not admissible in evidence because the officer had no warrant to search for them, and his only authority was under a warrant to search her husband's premises for intoxicating liquors. The defendant contends that, under such circumstances, the finding of criminatory articles or papers can only be proved when, by express provision of statute, the possession of them is itself made criminal. This ground of distinction is untenable. Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular, or even in an illegal, manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally, but his testimony is not thereby rendered incompetent."

The following is also quoted with approval from *State v. Flynn,* 36 N. H., 64:

"The evidence obtained by means of a search warrant is not inadmissible, either upon the ground that it is in the nature of admissions made under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search warrant was illegally issued."

Distinguishing the case of *Boyd* v. *United States,* supra, the court said:

"In that case a section of the customs and revenue laws of the United States authorized the court in revenue cases, on motion of the government's attorney, to require the production by the defendant of certain books, records, and papers in court; otherwise the allegation of the government's attorney as to their contents to be taken as true. It was held that the act was unconstitutional and void as applied to a suit for a penalty or a forfeiture of the party's goods. The case has been frequently cited by this court, and we have no wish to detract from its authority. That case presents the question whether one can be compelled to produce his books and papers in a suit which seeks the forfeiture of his estate on pain of having the statements of government's counsel as to the contents thereof taken as true and used as testimony for the government."

In *Adams* v. *New York,* supra, it appeared that while

the officers were making a legal search, for the purpose of finding gambling paraphernalia, they took other papers which were found useful in identifying the writing upon certain gambling papers. The question was whether these other papers could be used as evidence. The court said:

"We think there was no violation of the constitutional guaranty of privilege from unlawful search or seizure in the admission of this testimony. Nor do we think the accused was compelled to incriminate himself. He did not take the witness stand in his own behalf, as was his privilege under the laws of the State of New York. He was not compelled to testify concerning the papers or make any admission about them."

We need not pursue the subject further. The overwhelming weight of authority, both State and national, is in favor of the competency of the evidence offered in the present case, and we think there was no error in the judgment of the court below in the several cases mentioned, and all the judgments must be affirmed.