P. D. HUGHES *v.* THE STATE.

(*Nashville.*   December Term, 1921.)

1. **CONSTITUTIONAL LAW.** Objection need not point out by number provisions of Constitution claimed to have been violated.

It is not necessary for accused to point out specifically by numbers the particular sections of the Constitution which he claimed were being violated by the evidence offered against him, but it was sufficient to call attention to the particular right guaranteed to him by the Constitution. (*Post, pp.* 550, 551.)

2. **CONSTITUTIONAL LAW.** Objection to evidence held not to raise question under Constitution, protecting against compulsory incriminating testimony.

An objection that the conduct of officers in searching defendant's automobile and seizing liquor therein without a search warrant violated his constitutional rights against unreasonable search and seizure does not raise the objection that thereby accused was compelled to give evidence against himself, contrary to Constitution, article 1, section 9. (*Post, pp.* 550, 551.)

Acts cited and construed: Acts 1917, ch. 12.

Cases cited and approved: Cohn v. State, 120 Tenn., 61-75; Amos v. U. S., 255 U. S., 313.

Constitution cited and construed: Art. 1, sec. 7, 9.

3. **CRIMINAL LAW.** Searches and seizures. Constitutional protection applies only to governmental acts, and not to evidence of individuals unlawfully obtained.

The provisions of the federal and State constitutions against unreasonable searches and seizures protect the citizens only against action by the federal or state governmental agencies, respectively, and do not make inadmissible evidence unlawfully obtained from accused by private individuals. (*Post, pp.* 551-555.)

Cases cited and approved: Cohn v. State, 120 Tenn., 61; Boyd v. U.
S., 116 U. S., 619; Adams v. New York, 192 U. S., 586; Burdeau ·.
McDowell, 255 U. S., ——.

4. **CRIMINAL LAW.** Evidence procured by State agents in violation
of constitutional protection cannot be used.

Where agents or officers of the State procure evidence against ac-
cused by an unreasonable search and seizure, contrary to Constitu-
tion, article 1, section 9, the State will not be permitted, in prose-
cution of accused, to use such evidence against him. (*Post, pp.*
555-566.)

Cases cited and approved: Boyd v. U. S., 116 U. S., 616; Weeks v.
U. S., 232 U. S., 383; Silverthorne Lbr. Co. v. U. S., 251 U. S., 385;
Langdon v. People, 133 Ill., 382; Com. v. Dana, 2 Metc. 329.

5. **ARREST.** Person lawfully arrested may be searched.

Though the statutes authorize search only by search warrant, under
Shannon's Code, sections 7296 to 7311, or by order of the magis-
trate and in his presence, under section 7312, searches are al-
lowable at common law in all cases where a person is lawfully
arrested, for the purpose of taking from him dangerous weapons
or articles which may be used in evidence against him. (*Post, pp.*
566-569.)

Cases cited and approved: Boyd v. U. S., 116 U. S., 616; Chastang
v. State, 83 Ala., 30; Ex parte Hurn, 92 Ala., 102.

Code cited and construed: Secs. 7296-7311, 7312, 4797 4799, 4745 (S.)

Constitution cited and construed: Art. 1, sec. 7.

6. **ARREST.** Transportation of liquor concealed from sight is not an
offense in the presence of an officer.

A person who is engaged in transporting liquor does not commit the
offense in the presence of an officer, so as to authorize the officer
to arrest without warrant, where the liquor was concealed from the
officer's sight prior to the arrest. (*Post, pp.* 569, 570.)

Case cited and approved: Hurd v. State, 119 Tenn., 583.

Code cited and construed: Sec. 6997 (S.)

7. **ARREST.** Information leading officer to believe offense had been
committed does not authorize.

145 Tenn.—35

Hughes v. State.

An arrest by an officer without warrant is not justified by the fact that the officer had information leading him to believe that an offense was being committed. (*Post, pp.* 570, 571.)

8  ARREST. May be made to prevent threatened breach of the peace in officer's presence.

An officer may lawfully arrest a person without warrant, if a breach of the peace, which includes unlawful transportation of liquor, is threatened in his presence, and in such a case it is not necessary for the officer to see and know that the law is being violated. (*Post, pp.* 570-574.)

9.  ARREST. Criminal law. Facts held to warrant belief offense was about to be committed in officer's presence, justifying arrest and search, and evidence seized was admissible.

Where an officer had seen accused bringing to his automobile a keg having the appearance of a nail keg from a direction in which there was no store or other place where nails could be obtained, and knew that accused was reported to be engaged in the unlawful sale of liquor, the officer was justified in believing that a violation of the law against transportation of intoxicating liquors, which was a breach of the peace, was about to be committed, and in arresting accused without warrant, and searching him for evidence to be used against him, so that liquor seized by the officer at the time of making the arrest is admissible in evidence against accused. (*Post, pp.* 570-574.)

Case cited and approved: Hayes v. Mitchell, 69 Ala., 454.

Case cited and distinguished: State v. Reichman, 135 Tenn., 653.

---

FROM PUTNAM.

---

Error to the Criminal Court of Putnam County.— HON. J. M. GARDENHIRE, Judge.

WORTH BRYANT and V. E. BOCKMAN, for plaintiff in error.

WM. H. SWIGGART, JR., for the State.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

Plaintiff in error, P. D. Hughes, was convicted in the criminal court of Putnam county on an indictment charging him with violating the provisions of chapter 12 of the Acts of 1917, prohibiting the receipt, possession, and transportation of intoxicating liquors. By consent the trial was had before the trial judge without the intervention of a jury, who after hearing the evidence found the plaintiff in error guilty, and after overruling motion for new trial entered judgment against him for a fine of $50 and a sentence of six months in the workhouse.

The questions presented for our determination arise upon the action of the trial court on exceptions to the testimony introduced by the State. The State introduced three witnesses, namely, C. N. Gracey, a United States deputy collector, W. M. Stout, sheriff of Putnam county, and Bill Gailbreath, who seems not to have held any official position. The testimony of each of these witnesses, to which exception was taken, is substantially that given by Sheriff Stout, and is as follows:

W. M. Stout, sheriff of Putnam county, in which county this offense was committed, if at all, testified that he in company with Gracey, Tyler, and Gailbreath, was on the Buffalo Valley road west of Baxter, and saw plaintiff in error and one Stone come out of a road toward the Buffalo Valley road carrying a nail keg. He says:

"We decided probably that they had whisky," and that, after running their car around the hill out of sight of the plaintiff in error, he, Gailbreath, and Tyler, went back toward where the car of the plaintiff in error was standing, near the side of the road. Plaintiff in error had gotten into his car and started toward Baxter. "We got in the road in front of them and made them stop, and we searched their car, and found in this nail keg one gallon of whisky in a long dark bottle."

He says further: "We were not out looking for these boys on this occasion, but just happened to see them, and suspicioned that they had whisky. We had no warrant to search or seize the car or whisky, or for the arrest of either of the defendants. I had had some reports that the defendant, Hughes, was engaged in some way in whisky traffic, and seeing them come into the road with the keg, and from their actions and conduct and the reports I had received, I had reason to believe that it was whisky, and when I made a search it proved to be whisky."

The grounds of the exception to this evidence are: "That the parties in question had no right to hold them up while traveling upon a public highway, and seize and search his car without a search warrant, and without knowing that he had whisky, either on his person or in the car; by so doing they violated defendants' constitutional rights against unreasonable seizure and search."

This exception was overruled by the court, and due exception was taken to the court's action thereon. The court's ruling, as stated in the bill of exceptions, is:

"The court was of the opinion that it was not an unreasonable search, that the offense was committed in the presence of the officers, and that they were justified in

making the arrest, as the search resulted in finding whisky."

The evidence introduced by the State unquestionably made a case of violating the liquor laws of the State against the plaintiff in error, and the only question for our determination is whether this evidence can be rightfully made the basis of conviction, having been obtained and procured in the manner indicated. This involves the consideration of two questions: First, whether the act of the officers in arresting the plaintiff in error and in searching his car was a violation of the constitutional rights of the plaintiff in error, which protect him against unlawful searches and seizures; and, second, if the method of making evident this violation of the law was of itself unlawful, and violated the constitutional rights of the plaintiff in error, was the evidence nevertheless admissible, and can it properly be made the basis of a conviction?

A negative answer to the last question stated is based by counsel for plaintiff in error upon the provisions of sections 7 and 9 of article 1 of the Constitution.

Section 7 provides: That "the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures, and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by the evidence, are dangerous to liberty, and ought not to be granted."

Section 9 provides that—"In all criminal prosecutions the accused hath the right to be heard by himself and his counsel; to demand the nature  .  .  .  of the accusation

against him, . . . and shall not be compelled to give evidence against himself."

In his exception to the testimony the plaintiff in error did not specify that the admission of this testimony violated any of his rights under section 9 of article 1 of the Constitution, nor did he in making exceptions specify the particular clause of the Constitution which he claimed was or would be violated by the admission of this testimony; but his exception was based upon the ground that the conduct of witnesses was unlawful and violated his constitutional rights against unreasonable search and seizure. It was not necessary, in order to raise the question for the plaintiff in error, to specifically point out by numbers the particular sections of the Constitution which he claimed was being violated; nor are we justified in assuming, as is argued by the attorney-general, that the plaintiff in error in his exceptions referred only to the provisions of the federal Constitution which are similar to those found in our State Constitution. It was sufficient to raise the question to call attention to the particular right which is guaranteed to the citizen under our own Constitution. If any constitutional right of plaintiff in error has been violated in this case, it is referable to section 7, and therefore it will be unnecessary to consider whether his rights under section 9 were also violated.

There is much apparent, if not actual, conflict in the decisions with respect to the admissibility of testimony obtained by unlawful arrest and search. This court had occasion to review the subject quite fully in the case of *Cohn* v. *State*, 120 Tenn., 61-75, 109 S. W., 1149, 17 L. R. A. (N. S.), 451, 15 Ann. Cas., 1201. The question has more recently come under review by the supreme court of the

United States in the case of *Amos* v. *U. S.*, 255 U. S., 313, 41 Sup. Ct., 266, 66 L. Ed., —, decided February 28, 1921, published by Lawyers' Co-operative Publishing Company in Advance Sheets of April 1, 1921, and in *Gouled* v. *U. S.*, 255 U. S., 298, 41 Sup. Ct., 261, 66 L. Ed., —, decided at the same time and published in the same number of the Advance Sheets.

There is no conflict of authority upon the proposition that the constitutional provisions relied upon can only be invoked in this way to protect the citizen against the activities of the government. For example, the provisions of the Federal Constitution can only be invoked as against the activities of the agencies of the federal government, and likewise the rights of the citizens involved in the constitutional provisions referred to are only protected against the actions of officers of the State government. It is only when persons are acting under color of authority from the government that evidence developed in violation of the law can be at all rejected. *Cohn* v. *State,* 120 Tenn., 61, 109 S. W., 1149, 17 L. R. A. (N. S.), 451, 15 Ann. Cas., 1201; *Boyd* v. *U. S.,* 116 U. S., 619, 6 Sup. Ct., 524, 29 L. Ed., 746; *Adams* v. *New York,* 192 U. S., 586, 24 Sup. Ct., 372, 48 L. Ed., 575. None of the cases go to the extent of holding that because evidence has been obtained by unlawful means it is therefore inadmissible; it is only when evidence has been obtained by means of unlawful conduct of government officials in violation of the provisions of the Constitution referred to that it has been held inadmissible in any of the cases.

In the *Cohn Case,* supra, Cohn had been convicted for the offense of selling liquors and cigarette papers on Sunday, contrary to the statute. The case was made out against

him by the testimony of John Yeaman, a deputy sheriff of Davidson county, and another witness. He testified in substance: That he and two deputies went to Cohn's place about six o'clock on Sunday morning, January 13, 1907, and mounted a stairway leading up by the side of the saloon, and, after they had reached a point about one-half up the stairway they stopped and removed some bricks from the wall, and the mortar along with them, being careful to. draw the bricks and mortar out upon the stairway, so as to give no indication, in the saloon, of what they were doing on the stairway; that the hole thus made was smaller on the inside of the saloon than on the outside; that, having made this peephole, they sat and watched occurrences in the saloon; that they saw Lem Horton and Charles Perkins enter the barroom by a rear door, and they were soon followed by a crowd; that witness and those who were with him watched the persons inside for an hour; that Lem Horton and Charles Perkins sold, and received money for, a great many drinks of whisky and beer, certainly more than three; that they saw a large box of cigarette papers, and saw Lem Horton reach under the bar, take out this box, and sell a book of them to a customer, one Henry Ewing; that he rang up this sale of the cigarette papers, just as he did the drinks, in the cash register; that the witness and the others with him got the cigarette papers and the sale book and brought them to court. It was further testified that Horton and Perkins worked for Cohn.

When this evidence was given, Cohn, by his counsel, moved the court to strike out the entire testimony, because it was inadmissible and incompetent upon the ground that it was obtained illegally and contrary to the laws of the State and of the State and Federal Constitutions. The

trial court overruled the exception, and his action thereon was the basis of the appeal to this court. The court sustained the action of the trial court, and held that the evidence thus obtained was not in violation of the constitutional provisions against unreasonable searches and seizures, nor violative of the constitutional inhibition against compelling a party in criminal cases to give testimony against himself. In so holding the court said:

"We think the evidence was competent. The unreasonable search and seizure against which the constitutional provision was designed to operate was that made through governmental agency, and has no bearing upon the unauthorized acts of private persons, or of petty officers of the law. Nor has the inhibition against compelling a person charged with crime to incriminate himself any more bearing upon the present controversy, since the plaintiffs in error were not required to testify. Nor was any presumption indulged or permitted against them because of their silence. Nor were the plaintiffs in error required to produce any private papers that would so speak as to incriminate them. It is true that the act of Yeaman and his companions in making a hole in the wall and spying upon the inmates of the building was an unlawful one, for which they were subject to punishment. Still, although the evidence was thus procured, it would not be rejected by the court, if relevant to the issue. 4 Wigmore on Evidence, sections 2183, 2264; 1 Greenleaf on Evidence, section 254a; 2 Elliott on Evidence, section 1013."

In support of the conclusion above quoted the court referred to quite a number of cases from different jurisdictions. In some of the cases the testimony was held admissible upon the theory that, the evidence being proper in

itself, the court could take no notice of how it was obtained. In other cases it was held that the restrictions of the Constitution were intended to operate only upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every reasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. In still other cases the theory of admissibility was that, when an official of the State exceeded his authority, he would be deemed as acting, not for the State, but for himself only, and therefore he alone, and not the State, should be held accountable for his acts.

The reasoning of the cases referred to in the Cohn Case is not necessarily established by the decisions upon the facts of that case. In that case the officer of the law went about discovering the evidence in an unlawful way; but it was not a case in which the citizen was compelled to produce evidence of his own guilt, nor one in which an unlawful act of the officer itself disclosed the unlawful act of the defendant. It was a case in which the officers of the law themselves violated the law in order to place themselves in a situation to testify as to the facts, and not one in which the officers produced and disclosed a violation of the law by an invasion of the defendant's constitutional right against unlawful search and seizure. Many of the cases may be reconciled by observing the distinction just indicated. This distinction is illustrated by the case of *Burdeau* v. *McDowell*, decided by the supreme court of

the United State, June 1, 1921, and reported in 255 U. S., —, 41 Sup. Ct., 574, 66 L. Ed., —. It is pointed out in the dissenting opinion of Mr. Justice BRANDEIS, concurred in by Mr. Justice HOLMES, that the distinction made by the majority of the court in that case is one without a difference. Nevertheless this may account for the apparent conflict in the cases themselves. It was held by the majority of the court in that case that the constitutional guaranties against unreasonable searches and seizures and self-incriminations are not violated, where federal prosecuting authorities, to whom incriminating papers stolen by private persons have been delivered, retain them with a view to their use in subsequent investigations, where said papers will be part of the evidence against the accused, and may be used against him on the trial, should an indictment be returned; the government having had no part in the wrongful taking.

But in cases where the action of the governmental authorities is unlawful and violative of the constitutional rights of the citizen, and directly developed and disclosed the facts of the violation of the law, the government cannot rely upon the evidence thus unlawfully obtained by its agents. The *Cases of Amos* and *Gouled,* supra, are direct authority for the proposition just stated.

In the *Amos Case,* supra, the government's witnesses were deputy collectors of internal revenue. They went to the defendant's home, and, not finding him there, but finding a woman who stated she was his wife, told her that they were revenue officers and had come to search the premises for violations of the revenue law. Thereupon the woman opened the store, and the witnesses entered and in a barrel of peas found a bottle containing blockade whisky.

On cross-examination these witnesses testified that they had no warrant for the arrest of the defendant, nor any search warrant to search his house. Thereupon their testimony was excepted to, but the trial court admitted it over the defendant's objection. With respect to this action of the trial court the supreme court said:

"The answer of the government to the claim that the trial court erred in the two rulings we have described is that the petition for the return of defendant's property was properly denied, because it came too late when presented after the jury was impaneled and the trial, to that extent, commenced, and that the denial of the motion to exclude the property and the testimony of the government agents relating thereto, after the manner of the search of defendant's home had been described, was justified by the rule that in the progress of the trial of criminal cases courts will not stop to frame a collateral issue to inquire whether evidence offered, otherwise competent, was lawfully or unlawfully obtained.

"Plainly the questions thus presented for decision are ruled by the conclusions this day announced in No. 250, *Felix Gouled* v. *United States.*"

The court thereupon held the action of the trial court in admitting the evidence aforesaid to be reversible error. The reasoning of the court by which this result was reached had been stated by the court in its opinion in the Case of Gouled. The Gouled Case, as stated by the court, was this:

"In a joint indictment the plaintiff in error, Gouled, one Vaughan, an officer of the United States army, and a third, an attorney at law, were charged in the first count with being parties to a conspiracy to defraud the United States,

in violation of section 37 of the Federal Criminal Code [Comp. St., section 10201], and, in the second count, with having used the mails to promote a scheme to defraud the United States, in violation of section 215 of that Code [Comp. St., section 10384]. Vaughan pleaded guilty, the attorney was acquitted, and Gouled, whom we shall refer to as the defendant, was convicted, and thereupon prosecuted error to the circuit court of appeals, which certifies to this court six questions which we are to consider.

"Of these questions, the first two relate to the admission in evidence of a paper surreptitiously taken from the office of the defendant by one acting under direction of officers of the Intelligence Department of the army of the United States, and the remaining four relate to papers taken from defendant's office under two search warrants, issued pursuant to the act of June 15, 1917 (40 Stat., 217, 228, Comp. Stat., sections 10496 1-4a—10496 1-4b, Fed. Stat. Anno. Supp., 1918, pp. 120, 128. It was objected on the trial, and is here insisted upon, that it was error to admit these papers in evidence, because possession of them was obtained by violating the rights secured to the defendant by the Fourth and Fifth Amendments to the Constitution of the United States.

"The Fourth Amendment reads: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"The part of the fifth Amendment here involved reads: 'No such person . . . shall be compelled in any criminal case to be a witness against himself.' "

Two of the questions certified to the supreme court for answer were:

First. "Is the secret taking, without force, from the house or office of one suspected of crime, of a paper belonging to him, of evidential value only, by a representative of any branch or subdivision of the government of the United States, a violation of the Fourth Amendment?"

Second. "Is the admission of such paper in evidence against the same person, when indicted for crime, a violation of the Fifth Amendment?"

The facts upon which the answer to these two questions depended were:

"The facts derived from the certificate, essential to be considered in answering the first two questions, are: That in January, 1918, it was suspected that the defendant, Gouled, and Vaughan were conspiring to defraud the government through contracts with it for clothing and equipment; that one Cohen, a private in the army, attached to the Intelligence Department, and a business acquaintance of defendant Gouled, under direction of his superior officers, pretending to make a friendly call upon the defendant, gained admission to his office, and in his absence, without warrant of any character, seized and carried away several documents; that one of these papers, described as 'of evidential value only' and belonging to Gouled, was subsequently delivered to the United States district attorney, and was by him introduced in evidence over the objection of the defendant that possession of it was obtained by a violation of the Fourth or Fifth Amendment to the Constitution; and that the defendant did not know that Cohen had carried away any of his papers until he appeared on the witness stand and detailed the facts with respect

thereto as we have stated them, when, necessarily, objection was first made to the admission of the paper in evidence."

The court's answer to these questions is: "The ground on which the trial court overruled the objection to this paper is not stated, but from the certificate and the argument we must infer that it was admitted, either because it appeared that the possession of it was obtained without the use of force or illegal coercion, or because the objection came too late. . . .

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the

owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, and therefore the answer to the first question must be in the affirmative. . . .

"Upon authority of the *Boyd Case,* supra, this second question must also be answered in the affirmative. In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case."

This result is said to follow from the spirit of the decisions dealing with these constitutional provisions, and which the court describes as follows:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in *Boyd* v. *United States,* 116 U. S., 616, 6 Sup. Ct., 524, 29 L. Ed., 746, in *Weeks* v. *United States,* 232 U. S., 383, 34 Sup. Ct., 341, 58 L. Ed., 652, L. R. A., 1915B, 834, Ann, Cas., 1915C, 1177, and in *Silverthorne Lumber Co.* v. *United States,* 251 U. S., 385, 40 Sup. Ct., 182, 64 L. Ed., 319) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is that such rights are declared to be indispensable to the "full enjoyment of personal security, personal liberty, and private property;' that they are to be regarded as the very essence of constitutional liberty; and that the guaranty of them

is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen —the right to trial by jury, to the writ of *habeas corpus,* and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers."

In the Gouled Case, just referred to, the court held that not only the papers obtained without a warrant at all, but also other papers which had been seized under search warrants duly and lawfully issued, were obtained in violation of the defendant's constitutional rights. It does not follow that, because property is seized under legal search warrant, the seizure itself it not violative of the constitutional provisions referred to. These particular papers which were seized under search warrants themselves had no pecuniary value; they were valuable only in affording evidence against the accused of the offense of which he was charged. So the question was presented as to whether or not papers of this character seized under a search warrant were protected from seizure by the constitutional provisions against unreasonable searches and seizures. The principles of law for determining these questions were stated by the court to be:

"The wording of the Fourth Amendment implies that search warrants were in familiar use when the Constitution was adopted, and, plainly, that when issued 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,' searches, and seizures made under

145 Tenn.—36

them, are to be regarded as not unreasonable, and therefore not prohibited by the amendment. Searches and seizures are as constitutional under the amendment when made under valid search warrants as they are unconstitutional, because unreasonable, when made without them—the permission of the amendment has the same constitutional warrant as the prohibition has, and the definition of the former restrains the scope of the latter. All of this is abundantly recognized in the opinion of the *Boyd Case,* 116 U. S., 616, 29 L. Ed., 746, 6 Sup. Ct. Rep., 524, and the *Weeks Case,* 232 U. S., 383, 58 L. Ed., 652, L. R. A., 1915B, 834, 34 Sup. Ct. Rep., 341, Ann. Cas., 1915C, 1177, in which it is pointed out that at the time the Constitution was adopted stolen or forfeited property, or property liable to duties and concealed to avoid payment of them, excisable articles and books required by law to be kept with respect to them, counterfeit coin, burglars' tools and weapons, implements of gambling 'and many other things of like character' might be searched for in home or office and, if found, might be seized, under search warrants lawfully applied for, issued and executed.

"Although search warrants have thus been used in many cases ever since the adoption of the Constitution, and although their use has been extended from time to time to meet new cases within the old rules, nevertheless it is clear that, at common law and as the result of the *Boyd* v. *Weeks Cases,* supra, they may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the in-

terest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken. *Boyd Case,* supra.

"There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant. Stolen or forged papers have been so seized. (*Langdon* v. *People,* 133 Ill., 382, 24 N. E., 874), and lottery tickets, under a statute prohibiting their possession with intent to sell them (*Com.* v. *Dana,* 2 Metc. [Mass.], 329), and we. cannot doubt that contracts may be so used as instruments or agencies for perpetrating frauds upon the government as to give the public an interest in them which would justify the search for and seizure of them, under a properly issued search warrant, for the purpose of preventing further frauds."

It was held by the court that, since the papers had no pecuniary value and the government could not have any interest in the papers themselves, the only event in which they would have a right to take them into possession, it could desire their possession only for use as evidence, and to search and seize them for such purpose would be unlawful.

It was held that, although papers may not have any pecuniary value, nevertheless if they were of that character which justified the government in seizing them, under the principle stated, they could be used in the prosecution of a suspected person for a crime other than that which

may have been described in the affidavit as having been committed by him, but where the seizure was for the purpose only of using the paper as evidence such seizure would be unlawful. The court having held the seizure of these particular papers to have been unlawful, another question propounded to the court was:

"If papers of evidential value only be seized under a search warrant and the party from whose house or office they are taken be indicted; if he then move before trial for the return of said papers and said motion is denied —is the court at trial bound in law to inquire as to the origin of or method of procuring said papers when they are offered in evidence against the party so indicted?"

To this question the court replied: "The papers being of 'evidential value only' and having been unlawfully seized, this question really is whether, it having been decided on a motion before trial that they should not be returned to the defendant, the trial court, when objection was made to their use on the trial, was bound to inquire as to the unconstitutional origin of the possession of them. It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, and where, in the progress of the trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection

to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right.

"In the case we are considering, the certificate shows that a motion to return the papers, seized under the search warrants, was made before the trial and was denied, and that, on the trial of the case before another judge, this ruling was treated as conclusive, although, as we have seen, in the progress of the trial it must have become apparent that the papers had been unconstitutionally seized. The constitutional objection having been renewed, under the circumstances, the court should have inquired as to the origin of the possession of the papers when they were offered in evidence against the defendant."

We are of opinion that the case we have here, as made by the bill of exceptions, falls within the rule applied by the United States supreme court in the cases just referred to, rather than that announced in the Cohn Case. The State, having through its executive representatives produced the evidence of a violation of the law by one of its citizens by means prohibited by the Constitution, cannot be permitted through its judicial tribunal to utilize the wrong thus committed against the citizen to punish the citizen for his wrong; for it was only by violating his constitutionally protected rights that his wrong has been discovered. It is no answer to say that it matters not how a citizen's sins have been found out. Security from unlawful search is the right guaranteed to the citizen, even for the discovery of the citizen's sins. This right we must protect, unless we may with impunity disregard our oath to sup-

port and enforce the Constitution. The experience of our forefathers with unlawful searches and seizures was deemed by the people who framed the Constitution sufficient to warrant the provision by which in instances even the guilty might escape detection and punishment. We are not to be understood as holding that all evidence obtained by unlawful means is inadmissible, but only where in cases such as we have here the evidence offered has been produced by violating the constitutional protection against unlawful searches and seizures.

Was the arrest and search of the defendant in this case unlawful? Provision is made by statute in this State for searches in two cases only: One by search warrant issued upon affidavit showing probable cause (Shannon's Code, sections 7296-7311); and the other when a person charged with a felony is suspected by the magistrate before whom he is brought to have upon his person a dangerous weapon, or anything which may be used as evidence of the commission of the offense, the magistrate may direct him to be searched in his presence (Shannon's Code, section 7312). However, searches are allowable under the common law in cases where persons are lawfully arrested. 2 R. C. L., 468. In the text cited it is said:

"An officer making an arrest has authority to search the person of his prisoner, even against his will; but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful. Thus an officer acting without a warrant for an arrest and without attempting to make an arrest is not justified in making a search of a person upon mere suspicion that he has committed a crime. The officer making an arrest and search of the person of the prisoner may take from him

any dangerous weapons, or anything else that he reasonably may deem necessary to his own or the public safety, or for the safe-keeping of the prisoner, and take into his possession the instruments of the crime and such other articles as may be of use as evidence on the trial or which might enable the prisoner to escape."

Our statute on the subject of searches, to which we have just referred, was taken from the. Code of Alabama. The supreme court of Alabama, in discussing the right of search under the statute similar to our own, and under the common law, said, among other things:

"In commenting on article 4 of the Constitution of the United States, which prohibits unreasonable searches and seizures, in the case of *Boyd* v. *United States,* 116 U. S., 616, 29 L. Ed., 746, Mr. Justice BRADLEY, delivering the opinion, quoted with approbation from Lord CAMDEN as follows: 'By the laws of England, every invasion of private property, be it ever so minute, is a trespass. No man can set his foot on my ground without my license, but he is liable to an action, though the damage be nothing.   .   .   . If he admits the fact, he is bound to show, by way of justification, that some positive law has justified or excused him. The justification is submitted to the judges who are to look into the books, and see if such a justification can be maintained by the text of the statute law, or by the principles of the common law. If no such excuse can be found or produced, the silence of the books is an authority against the defendant.   .   .   .   According to this reasoning, it is now incumbent upon the defendants to show the law by which this seizure was warranted. If that cannot be done, it is trespass.' These are the principles which protect every citizen of this government in the enjoyment of

his personal liberty, his home, and his property, and no other 'can abide the pure atmosphere of a government of political liberty and personal freedom.'

"This court in *Chastang* v. *State*, 83 Ala., 30, referring to the opinion of Justice BRADLEY, declared: 'We indorse and approve everything said therein.' The statute law provides for the issuance of search warrants, but specifies on what grounds they are to be issued, and only on probable cause, supported by affidavit, naming the person, and particularly describing the property and place to be searched. Code, section 4727-4729. The seach and seizure in the present case were not made under these statutory provisions. Section 4745 of the Code we have quoted above, and which provides that when a person is charged with a felony, and is supposed to have a dangerous weapon, or anything which may be used as evidence of the commission of the offense, he may be searched, and such weapon or thing may be seized and retained, subject to the order of the court in which the defendant is to be tried. The question as to the dangerous weapon does not arise in this case. That part of the statute which authorizes the seizure and retention of 'anything which may be used as evidence' on the prosecution is a mere statutory enactment of the common law. At common law ʼthe arresting officer had the right to remove money from the defendant's person; but this right was limited to cases in which the money was connected with the offense, or to be used as evidence. See *Wharton,* supra; *Bishop,* supra, and the cases cited in support of the text."

*Ex parte Hurn,* 92 Ala., 102, 9 South., 515, 13 L. R. A., 124, 25 Am. St. Rep., 23.

So that, if the arrest is lawful, a search revealing evidence of the offense for which a person is arrested is not unreasonable, or violative of section 7 of article 1 of the Constitution.

The arrest in this case was made by the sheriff without a warrant. It is contended for the State that the arrest was lawful, notwithstanding it was made without a warrant, for the reason that the plaintiff in error was engaged in the commission of an offense in the presence of the officers. The circuit judge was of the opinion that this arrest was authorized, because after the arrest it was found that the plaintiff in error had intoxicating liquor in his possession.

It does not follow from the fact that evidence discovered upon the arrest proved the commission of an offense, that the arrest itself was authorized. Under our statute (Shannon's Code, section 6997) an officer may without a warrant arrest a person for a public offense committed in his presence. That means that the offense, or the facts constituting the offense, must be revealed in the presence of the officer. An officer cannot lawfully arrest a person without a warrant and search his person for the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense was not in legal contemplation committed in the presence of the officer, and such an arrest is unauthorized, where the facts constituting the offense are incapable of being observed or are not observed by the officer. That such is the rule of law under our statutes is readily seen by an examination of the case of *Hurd* v. *State,* 119 Tenn., 583, 108 S. W., 1064. In that case the plaintiff in error had just shot one officer with a pistol, and was seen by

several persons running down the street with a pistol in his hand, when another officer attempted to arrest him. He did, in fact, have the pistol at the time òf the attempted arrest, because he turned upon the officer, and shot and killed him. Yet it was held by this court that such an attempted arrest was unlawful and plaintiff in error had a right to resist it. Under the circumstances the trial judge instructed the jury:

"If deceased was a policeman in the city of Chattanooga at the time he was killed, and direct information was brought to him that defendant had a pistol on his person, it was his duty, as well as his lawful authority, to arrest said Hurd, with or without a warrant, and as to whether or not he was in uniform would be immaterial."

The court held that this instruction was erroneous, saying:

"It is clear from the record that the deceased was attempting to arrest the defendant for a misdemeanor which was not committed in his presence, but the fact of its commission was communicated by others, and the instruction of the trial judge that the deceased had lawful authority to arrest the defendant without a warrant was erroneous."

And this was true, notwithstanding the fact that the defendant, when the officer attempted to arrest him, had the pistol, and in fact used the pistol on the officer in resisting arrest.

It follows, therefore, that it cannot be said that the plaintiff in error was in the commission of an offense in the presence of the officers, so as to justify the arrest, merely from the fact that, when the arrest was effected, it was found that he was actually committing an offense. Neither is it sufficient to justify the arrest that the officer had in-

formation justifying him in the belief that an offense was being committed, for the facts constituting the offense must have been within the knowledge of the officer, and that knowledge must have been revealed in the officer's presence. To illustrate: If a person has in his possession a concealed weapon, if he exposes it in the presence of an officer or uses it, and the officer sees it, then the officer may lawfully arrest him without a warrant. A person may have a concealed weapon upon his person, but if there is no evidence of that fact apparent to an officer his arrest would be unwarranted. The plaintiff in error may have been, as it was subsequently developed, engaged in the transportation of liquor in violation of the law, but the fact of his having liquor was not evident to the officer making the arrest. It must be held, therefore, that the arrest cannot be justified upon the ground of the commission of an offense in the presence of the officers.

But an officer may lawfully arrest a person if a breach of the peace is threatened in his presence. In such a case it is not necessary for the officer to see and know that the law is being violated. Indeed, he may arrest a person in order to prevent a violation of the law. In such a case he may lawfully arrest the person, if the circumstances are sufficient to justify the belief in the mind of a prudent officer, acting in good faith, that a breach of the peace is about to occur. Of course, an arrest for a breach of the peace cannot be justified merely upon belief or suspicion existing in the mind of the officer; but, where the actions of the person and the surrounding circumstances are such as to indicate a threatened breach of the peace, the arrest may be lawfully made. In this case the plaintiff in error had left his automobile on the side of the road. He was

approaching his car, carrying a keg having the appearance of a nail keg, or horseshoe keg. There was no store or other place in the direction from which he was coming to indicate that this keg contained nails, or horseshoes, or other articles ordinarily contained in a container of that kind. Plaintiff in error was reputed to be engaged in the unlawful sale of liquor. These circumstances justified the officer in believing that a violation of the law was about to be committed. It is a breach of the peace to transport intoxicating liquors. *State* v. *Reichman,* 135 Tenn., 653, 188 S. W., 225, Ann. Cas., 1918B, 889. In that case the court said:

"The unlawful sale of liquor being a breach of the peace, it is not always necessary for an officer to actually see a sale before he is authorized to make an arrest without a warrant. If, in his presence, such a sale is threatened, he is authorized to arrest as for any other threatened breach of the peace. The threat need not be in words. If one man puts himself in a position to assault, and by his acts manifests a purpose to assault another, a breach of the peace is undoubtedly threatened. How does this principle apply to a threatened unlawful sale of intoxicating liquors? The condemnation of our statutes is confined to the selling of such liquors. It is not unlawful for a man to have liquors, in any quantity, in his home or in his place of business. The mere presence of liquors, therefore, without more, is not a public offense, and will not under all circumstances indicate a purpose or threat to sell them unlawfully. Thus a stock of liquors in a house from which an interstate shipping business is being done may have no unlawful significance. . . . Our act authorizing an arrest for a threatened breach of the peace was taken from

the Alabama Code of 1852. And we quote, with approval, what the supreme court of that State has said in sustaining the right of an officer to prevent a threatened breach of the peace, as follows:

" 'Two great and vital principles of government are to be kept steadily in view, in pronouncing on conduct, such as is brought to view in this record—the liberty of a citizen, and the peace and repose of society. Civil liberty is natural liberty, shorn of the excesses which invade and trench on the equal liberty of others. No one can claim the right to violate the law, and precautionary force is justified, to prevent a greater impending evil. Such force, however, is in its nature remedial, and can be carried no further than is reasonably necessary to prevent the threatened wrong. Prevention is less hurtful than redress, and, when prudently exercised, is not only justified, but is commended of the law. No man can rightfully complain of any encroachment upon personal liberty, which he himself by his lawlessness or violence has rendered necessary for the safety and protection of others. It is liberty as defined by law, not unbridled license, our free Constitution guarantees to every man—the humblest, equally with the most exalted.' *Hayes* v. *Mitchell,* 69 Ala., 454."

At the time of the Reichman Case, above referred to, receiving, having in possession, and transporting liquor was not a violation of the law; but it has been made such by subsequent legislation, and for the same reasons constitutes a breach of the peace, and therefore, when threatened under circumstances justifying apprehension in the presence of an officer, the officer may lawfully arrest the person about to commit it and search him for evidence of a violation.

We hold, therefore, that the arrest of the plaintiff in error under the circumstances was lawful, under the provisions of our statute which authorizes an officer to arrest a person without a warrant for a breach of the peace threatened in his presence. The arrest being lawful, the search was also lawful, to the extent that it resulted in finding upon the person or in the possession of the plaintiff in error the evidence of the fact that he was about to violate the law, and this evidence was competent and admissible. There is, therefore, no error in the judgment of the circuit court, and the same will be in all things affirmed.