ELMER VENABLE, Plaintiff in Error,

*v.*

STATE, Defendant in Error.

362 S.W.2d 222

(*Knoxville,* September Term, 1962.)

Opinion filed November 9, 1962.

T. O. JEWELL, Chattanooga, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for the State.

Mr. Special Justice Tomlinson delivered the opinion of the Court.

This appeal in error comes from a conviction of Venable of professional gambling, a felony denounced by Section 39-2032 T.C.A. et seq. He was found guilty of conducting, or participating in, a numbers game, to-wit: —a Butter and Egg and, or stock lottery: 39-2033(3).

Venable was watched by the attorney general and a deputy sheriff of Hamilton County rather closely from June 27, 1961 until the date of his arrest on August 11, 1961 at a place not otherwise located than being the parking lot of a place known as Nash Whiskey Store.

The deputy sheriff testified that during this period of surveillance "the only thing I ever saw the defendant do was to meet people whom I knew to be in the numbers' racket, and to houses where I knew they were writing numbers." The deputy sheriff observed such associations of Venable with such people on quite a few occasions during the period stated. The stopping places were not located except by name of the places or persons.

Such observations were made by the deputy following the car of Venable on these occasions. No warrant

for the search of Venable or his car was ever sought during this period.

Finally on August 11, 1961, this investigating officer and the attorney general, in the course of following Venable, observed him back his car against, and park it, against a wall in the parking lot of the Nash Whiskey Store, after coming from a "numbers pickup house". Then the deputy pulled the deputy's car in front of Venable's so as to block it. This deputy then approached to the front left side of Venable's car. He was so approaching for the purpose of arresting and searching Venable and his car. As he so approached the front of the left side of Venable's car, he saw Venable open the door of the car on his side, (the left), and saw his hand "go back in this manner." No effort was made to clarify this hand movement, but after the arrest and search of Venable and his car a group of "stock tickets" were found on the ground just to the rear of the door which Venable was seen to open with the hand movement described. These stock tickets, by their respective markings and notations, evidenced their use this date in conducting this professional gambling on that date. No other evidence of such gambling was found in the car or on the person of Venable except that a book of blank stock tickets used in conducting this gambling was found in Venable's pocket.

■ The deputy and district attorney making this arrest had no search warrant or warrant of arrest. Until after Venable had been detained by these officers they had no evidence to go on. During the entire period of surveillance, the only conduct of Venable, insofar as the officers observed, was that he was seen associating

with, or at the houses of, persons generally reported to be in this professional gaming business. The deputy sheriff who so observed Venable on these occasions admitted that he never saw Venable commit any offense during this period of surveillance until after he, without a warrant of any kind had detained him in the process of arresting him.

That detention was unlawful. All the evidence obtained was by reason of that unlawful detention. It would have been routine to have procured a search warrant before proceeding to detain him.

The brief filed for Venable cites and quotes from several cases which are in point.

*Hughes v. State,* 145 Tenn. 544, 569 and 571, 238 S.W. 588, 595, 20 A.L.R. 639, ruled viz:

"* * * An officer cannot lawfully arrest a person without a warrant and search his person for the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense was not in legal contemplation committed in the presence of the officer, and such an arrest is unauthorized, where the facts constituting the offense are incapable of being observed or are not observed by the officer. * * *"

This opinion continues on page 571, 238 S.W. on page 596 viz.:

"* * * The plaintiff in error may have been, as it was subsequently developed, engaged in the transportation of liquor in violation of the law, but the fact of his having liquor was not evident to the officer making the arrest. It must be held, therefore, that

the arrest cannot be justified upon the ground of the commission of an offense in the presence of the officers.''

■ In *Epps v. State*, 185 Tenn. 226, 230-231, 205 S.W.2d 4, 6, this Court held as follows:

"The officers in the instant case had been given their information about the accused some days before this arrest. They made no attempt to secure a search warrant. They contented themselves with waiting until they saw him driving out one of the streets of Morristown when they followed him and made the arrest. Their expedition was more or less of a fishing expedition. If they found whiskey so well so good, but if they did not find any this too was all right with the officers. More is required of our law enforcement officers. They cannot secure evidence in this manner and use it as a basis to convict the one in possession of the evidence thus secured. They do say Epps said 'you have got me', but this statement was made after his unlawful arrest. The statement is a logical sequence and part of the unlawful arrest and must be disregarded.''

So here the ''hand movement'', whereby lottery tickets in the car were dropped on the highway to be later discovered by the deputy was only ''a logical sequence and part of the unlawful arrest and must be disregarded.''

Since the judgment must be set aside and a new trial granted for the reason stated, it is unnecessary to notice other assignments of error.

Reversed and remanded.