MORRISON *et al. v.* STATE.

(*Knoxville,* September Term, 1950.)

Opinion filed March 9, 1951.

BANDY & BANDY, of Kingsport, for plaintiffs in error.

J. MALCOLM SHULL, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

This is an appeal from a conviction of transporting more than one gallon of whiskey, with punishment fixed at confinement in the penitentiary from one to four years, and of possession of the same whiskey, with punishment fixed at a fine of $500 for each defendant.

On the 20th day of June, 1950, Highway Patrolman Haun was handling traffic at a funeral near Rogersville when he observed a 1949 blue Pontiac convertible being driven in the direction of Kingsport at a speed of from 20 to 30 miles per hour. Harkleroad was driving and his codefendant was with him. Both were known by the Highway Patrol. As the car passed the Highway Patrolman he noticed that the back of the car was stacked with something covered by a blanket, and, out of the corner where the blanket had blown away a little, he saw some kind of packages wrapped in brown paper. He communicated with the Highway Patrol headquarters in Kingsport by radio, and headquarters communicated with Patrolman Barger. Patrolman Haun informed the headquarters that this blue Pontiac convertible was traveling in that direction and that it was stacked from the floor board to about half way. up on the back of the front seat in the back seat "and that he thought they

had whiskey''. Both Patrolman Haun and Barger knew the defendants and knew that their reputation was that of being bootleggers.

Patrolman Barger received the call from headquarters at ten minutes after 2:00 o'clock that the plaintiffs in error were coming that way and he then proceeded to an underpass just outside of Kingsport; parked his patrol car and got out in the road with a gun. As the plaintiffs in error drove up he stopped them and informed them that they were under arrest. He immediately took the switch key from the car and asked one of the defendants how much he had and the defendant replied ''I don't know''. This arrest was made about 25 or 30 minutes after Patrolman Barger had received the information that the plaintiffs in error were on their way there. He had at least 25 minutes after receiving this information before these parties arrived. He had a description of the car that they were driving and also the names of the parties who were in the car. The arrest was made something over 25 miles away from where the car was first seen by Patrolman Haun.

Patrolman Barger says that he arrested these parties ''on their reputation, is that it? Yes Sir''. Patrolman Haun was asked in reference to what he saw and said: ''All I saw was under one corner, brown paper. Q. Brown paper? A. Yes Sir.'' After the arrest was thus made a search was made of this car and 240 half pints and 156 pints of bottled whiskey, wrapped in brown paper packages, each containing 3 to 6 bottles, were found. Some of the whiskey was Calverts and Seagrams. Prior though to the arrest and taking the blanket off of and tearing open the packages and making the search there is not a scintilla of proof that anybody could see anything to indicate whiskey other than the suspicion

of these officers. They knew that the plaintiffs in error had the reputation of being bootleggers and, as the officers say, they just suspected they had whiskey and it was on such suspicion that the information was given and the arrest made.

■■ The plaintiffs in error introduced no proof and did not take the stand. Obviously the question presented by this appeal is that the search was illegal and the evidence so obtained inadmissible. We are compelled to agree. The officers were not informed or did not know how much liquor was being hauled. The arrest was made on mere suspicion. This Court in *Hughes* v. *State*, 145 Tenn. 544, 571, 238 S. W. 588, 596, 20 A. L. R. 639, among other things said: "Of course, an arrest for a breach of the peace cannot be justified merely upon belief or suspicion existing in the mind of the officer; but, where the actions of the person and the surrounding circumstances are such as to indicate a threatened breach of the peace, the arrest may be lawfully made." Clearly the facts developed in this case do not justify an arrest and search without a search warrant.

The officers at Kingsport, under the evidence adduced herein, had at least 25 minutes from the time they received the information that this car was coming in that direction to have secured a search warrant and then to have stationed themselves where they did at the underpass in the highway and made the arrests and search pursuant to a search warrant which they could have very easily obtained in that length of time. The case is apparently clearly controlled by *Epps* v. *State,* 185 Tenn. 226, 205 S. W. (2d) 4; compare *Thompson* v. *State,* 185 Tenn. 73, 203 S. W. (2d) 361, and *Jones* v. *State,* 161 Tenn. 370, 33 S. W. (2d) 59; *Lindsey* v. *State,* 191 Tenn. 51, 231 S. W. (2d) 380.

Regrettable though it is, we must reverse the case where the parties are clearly guilty. The case must be reversed because the conviction is based upon illegal evidence. These officers knew that in ordinary circumstances it was necessary for them to have a search warrant and in the instant case they had an ample opportunity to get a search warrant; they had a description of the car and of the parties in the car.

This holding conforms with the rule laid down by the Supreme Court of the United States in *Taylor* v. *United States,* 286 U. S. 1, 52 S. Ct. 466, 467, 75 L. Ed. 951. We approve and adopt therefrom the following:

"Although over a considerable period numerous complaints concerning the use of these premises had been received, the agents had made no effort to obtain a warrant for making a search. They had abundant opportunity so to do and to proceed in an orderly way even after the odor had emphasized their suspicions; there was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility.

"We think, in any view, the action of the agents was inexcusable and the seizure unreasonable."

For the reasons herein stated the case is reversed and dismissed. There was no information passed by Officer Haun to the headquarters, who in turn passed this information on to Officer Barger, that this car contained liquor. All that Haun said was that he was suspicious of the fact.

All concur.