UNITED STATES of America

v.

Clarence Elmo HASKINS and Emma Jean Cook.

Cr. No. 1270.

United States District Court
E. D. Tennessee,
Winchester Division.

Nov. 1, 1962.

J. H. Reddy, U. S. Atty., Bruce Guthrie, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Charles Wade, Lewisburg, Tenn., for defendants.

NEESE, District Judge.

This action presents a provocative question of the legality of a search and seizure. The Court, after hearing a pretrial motion (treated as a motion to suppress illegally obtained evidence), overruled the motion and permitted the case to go to trial before a jury. The defendants were convicted on two counts, one involving the possession, the other the transportation, of tax-unpaid whiskey. The Court now acts on the defendants' timely motion for a judgment of acquittal based on the alleged unlawfulness of the search.

█ This is a "silver platter" case made by county officers and adopted by the federal government. The Court, first, takes judicial notice of the fact that the possession and transportation of both tax-paid and tax-unpaid whiskey is unlawful in Bedford County, Tennessee.

On June 24, 1962 a search warrant was issued by a state judge authorizing county officers to search the residential premises of one Dillard Stover, reputedly an illegal retailer of whiskey in Shelbyville, Tennessee. Two nights thereafter, Sheriff Virgil Newman and two of his deputies conducted a surveillance of the Stover premises from about 7:00 o'clock to about 8:30 o'clock, p. m., from a point across the dead-end street from Stover's residence. The officers concealed themselves behind a stone wall in underbrush. They saw in this period nine (9) automobiles stop at the Stover residence. Occupants from the first seven (7) of these vehicles entered the Stover dwelling, remained only briefly, and then left the premises in the vehicles in which they had arrived. The officers neither saw nor heard anything untoward in these initial transactions. As the eighth vehicle was leaving the Stover residence, however, the officers overheard the following remark: "He said he didn't have any right now but would in a little bit."

Approximately fifteen minutes after overhearing this remark during the progress of their surveillance, the officers saw the defendants (and Mrs. Cook's minor daughter) arrive on the scene in a 1956 blue and white Ford automobile, belonging to Mrs. Cook. Both the defendants Haskins and Mrs. Cook had the reputation with these officers of being wholesalers of illegal whiskey, and the automobile was reputed to have been utilized in the recent past for the transportation of large quantities of illegal whiskey.

To clarify this opinion, it should be stated here that until this particular automobile occupied by these particular persons arrived then and there, the Court is of the opinion that no probable cause had been presented to the officers for either the search of this vehicle nor for the issuance of a warrant for a search thereof.

The automobile occupied by the defendants was driven into the half-moon driveway in front of the Stover residence and stopped. The defendant Haskins alighted from the vehicle and went into the Stover residence. In a few minutes both Haskins and Stover came out of the house onto the front porch, and at this moment Sheriff Newman and his deputies crossed the street, served the search warrant on Stover, and the deputies began a lawful search of Stover's premises. Sheriff Newman then advised the defendant Haskins that it would be necessary for him to search the automobile in the driveway. He requested the defendant Haskins to produce the keys to the vehicle. At first both the defendants denied having the keys, but after being confronted with the fact that no keys were in the ignition switch, Haskins gave Sheriff Newman the car keys. The ensuing search of the trunk of the automobile led to the discovery of six (6) gallons of tax-unpaid whiskey. The defendants were then formally arrested.

The Court has been provided with no authority, and has located none, providing a precedent for the situation at bar. After reviewing the basic principles of searches and seizures of automobiles, and with much travail, the Court has concluded that this was a lawful search and seizure, infra.

"To justify an arrest for the unlawful possession or transportation of intoxicating liquor upon the ground that the act of the accused for which he is taken into custody was committed within the presence of the officer, the circumstances presented to the latter's senses must furnish him with probable cause for the belief that the crime is being committed; he must have direct knowledge, acquired at the time through his hearing, sight, or other sense, of the commission of the crime; * * * An arrest may not be predicated upon mere hearsay or suspicion, and this is true even though a subsequent search of the person discloses that he was in fact violating the law. * * *" 30 Am.Jur. 780, Intoxicating Liquors, sec. 449.

"* * * (E)ach individual case, as it arises, must be decided upon its own particular facts as to whether there was probable cause for a search or seizure." Fowler v. United States, C.A.6th (1955), 229 F.2d 215, 216. Generally, the test to be applied in determining whether a search and seizure is unreasonable and violative of an accused's constitutional rights is whether the thing done in sum of its form, scope, nature, incidents, and effects impresses the mind as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. Schwimmer v. United States, C.A.8th (1956), 232 F. 2d 855, certiorari denied 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52.

While Sheriff Newman fallaciously considered that the state search warrant with which he was armed gave him the authority to conduct a search of Mrs. Cook's automobile while it was on Stover's premises, all the circumstances aforementioned are reasonably persuasive that the probable purpose of the trip by the defendants to Stover's place of illegal operations was not innocent,

but involved the transportation by the defendants of illegal whiskey from one of the sources of Stover's supply to his retail outlet. Brinegar v. United States (1949), 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. See also, Husty v. United States (1931), 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; Godette v. United States, C.A.4th (1952), 199 F.2d 331; Carter v. United States, C.A.5th (1956), 231 F.2d 232; Ray v. United States, C.A.4th (1958), 255 F.2d 473.

The Court is impressed by the fact that Shelbyville, Tennessee is a comparatively small, "dry" city where local law enforcement officers well know the reputations of both persons and vehicles customarily engaged in violations of the liquor laws. Contrasted with this situation, in both Brinegar and Carroll, supra, the sources of supply and the retail outlets included large geographical areas. Indubitably, many innocent persons traveled from Joplin, Missouri to the northern part of Oklahoma and from Detroit to Grand Rapids, Michigan; known bootleggers might have traveled the same routes for lawful purposes. Yet, in each of those respective situations, the Supreme Court of the United States held that when law enforcement officials recognized a driver on a particular route as a known bootlegger operating in the area of the retail outlet, the officer had probable cause to believe that the driver of the vehicle involved was making that particular journey in aid of his illegal activity.

■ When Sheriff Newman, armed with the knowledge he had concerning the reputations of those involved for illegal activities in this particular field of lawlessness, overheard the remark that he heard, and saw what he saw in apparent confirmation of the hearsay statement he had heard, the Court thinks he was supplied, in the aggregate, with circumstances giving reasonable rise to much more than mere suspicion. Had he not concluded that the probable use

of the Cook automobile was the illegal transportation of illegal whiskey, he would have been naive indeed. It must be remembered that Sheriff Newman was as concerned with violations of the Tennessee law as regards bonded whiskey as he was with the violation of federal law as regards tax-unpaid whiskey. Both were contraband in Bedford County, Tennessee. And Sheriff Newman is permitted to make arrests without a warrant when a public offense is committed or a breach of the peace is threatened in his presence. T.C.A. § 40–803(1).

The Tennessee Supreme Court long ago sanctioned an arrest and search by an officer to prevent a threatened breach of peace in his presence under circumstances of even more gentle persuasion than that presented in the case at bar. There, the defendant Hughes had left his automobile on the side of a road. When the arresting officers saw him, he was approaching his car, carrying a keg having the appearance of a nail or horseshoe keg. There was no store or other place in the direction from which he was coming to indicate that this keg contained either nails, horseshoes or other articles ordinarily enclosed in a container of that kind. Hughes was reputed to be engaged in the unlawful sale of liquor.

"These circumstances," the Tennessee court said, "justified the officer in believing that a violation of the law was about to be committed. It is a breach of the peace to transport intoxicating liquors. * * *" Hughes v. State (1921), 145 Tenn. 544, 571–572, 238 S.W. 588, 596, 20 A.L.R. 639. The Court further commented:

" * * * (A)n officer may lawfully arrest a person if a breach of the peace is threatened in his presence. In such a case *it is not necessary for the officer to see and know that the law is being violated. Indeed, he may arrest a person in order to prevent a violation of the law.* In such a case he may lawfully arrest the person, if the circumstances are sufficient to justify the belief in the mind of a prudent officer, acting in good faith,

that a breach of the peace is about to occur. Of course, an arrest for a breach of the peace cannot be justified merely upon the belief or suspicion existing in the mind of the officer; but, where the actions of the person and the surrounding circumstances are such as to indicate a threatened breach of the peace, the arrest may be lawfully made. * * *" Idem., 145 Tenn. at p. 571, 238 S.W. at p. 596. (Emphasis supplied by this writer.)

These utterances are corroborated in principle by subsequent decisions of the Supreme Court of the United States, *i. e.:*

"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa.St. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at 161 [45 S.Ct. 280, 69 L.Ed. 543, 554, 39 A.L.R. 790]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C.J., said for the Court more than a century ago in Locke v. United States, 7 Cranch (U.S.) 339, 348 [3 L.Ed. 364, 367]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [69 L.Ed. 543, 555, 45 S.Ct. 280, 39 A.L.R. 790].

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

"The troublesome line posed by the facts in the Carroll case and this case is one between mere suspicion and probable cause. That line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances. No problem of searching the home or any other place of privacy was presented either in Carroll or here. * * * But one who recently and repeatedly has given substantial ground for believing that he is engaging in the forbidden transportation in the area of his usual operations has no * * * immunity, if the officer who intercepts him in that region knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs." Brinegar v. United States, supra, 338 U.S. pp. 175–177, 69 S.Ct. pp. 1310–1311, 93 L.Ed. pp. 1890–1891.

▓ It is, of course, conceivable that the defendants Haskins and Mrs. Cook might have come in this automobile, despite its and their reputations, to the Stover residence for lawful purposes. Had they not on this occasion been transporting contraband, they and the automobile, obviously, would have been subjected to a fruitless though legal search,

Husty v. United States, supra; for it is not what is brought to light by a search which makes it a legal search. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. On the other hand, however, a fruitless search would have been most surprising under all the attendant circumstances. It is likewise true that the officers' sole sensory reaction was overhearing a hearsay statement; but hearsay evidence is not to be eliminated as a basis, together with other circumstances, for probable cause justifying a search. United States v. Li Fat Tong, C.A.2nd (1945), 152 F.2d 650; Carroll v. United States, supra; Dumbra v. United States (1925), 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032; Husty v. United States, supra; Gilliam v. United States, C.A.6th (1951), 189 F.2d 321, 323[5].

There was nothing in the conduct of these officers to indicate unreasonableness. Before beginning their surveillance, they had obtained a search warrant for Stover's property. They might have served it at any of the times the passengers of the first eight vehicles were visiting their bootlegger; but the officers neither saw nor heard anything suggesting that a violation of the law was then occurring, or about to occur, in their presence. It was only *after* they heard language permitting the inference that the retailer in illegal whiskey had exhausted his supply, had ordered more from his supplier, and that shortly it would be delivered by a wholesaler, that a breach of the peace was threatened in their presence. The Court may also infer that if any person other than known wholesalers of illegal whiskey had arrived in the ninth car, the officers would not have searched them or their automobile. The history of the surveillance is indicative of that. But when the ninth car proved to be one reputedly utilized in the hauling of large quantities of whiskey, and the officers saw in the vehicle known wholesalers of illegal whiskey, the reasonable probability was that a breach of the peace would be committed in their presence unless they stopped it. In the light of the factual and practical considerations of everyday life on which reasonable and prudent men act, it was altogether rational for the officers to conclude that these defendants were not about to contact Stover there and then concerning legitimate affairs.

From all which the Court is of the opinion that the defendants' motion for a judgment of acquittal should be denied. The United States attorney will submit an appropriate order agreeably with the rules of this court.