**STATE of Missouri, Respondent,**

**v.**

**Otto Lang SAMPSON, Appellant.**

**No. 51805.**

Supreme Court of Missouri,
Division No. 2.

Nov. 14, 1966.

85

Norman H. Anderson, Atty. Gen., Jefferson City, James M. Byrne, Sp. Asst. Atty. Gen., St. Louis, for respondent.

W. J. Taylor, Jr., Lawrence A. Waldman, John L. Davidson, Jr., St. Louis, for appellant.

STOCKARD, Commissioner.

Otto Lang Sampson, charged as an habitual criminal, was found guilty by a jury of illegally possessing amphetamine, a stimulant drug, and was sentenced by the court to confinement for a term of four years. He has appealed from the ensuing judgment.

Appellant asserts on this appeal that the trial court erroneously overruled his motion to suppress evidence which was filed and ruled on prior to trial. At the hearing on the motion Patrolman Kent Kennison, called as a witness by appellant, testified that he and another member of the St. Louis Police Department observed appellant about 11:20 o'clock of the evening of April 26, 1965, looking into some automobiles parked in a commercial parking lot in the 3900 block of Olive Street. Appellant observed the officers watching him and he started to walk out of the lot. The officers started to approach appellant, and when they were about ten feet behind him, and as far as is shown by the record with no word being said, appellant looked back and saw the officers and "went for his right trouser pocket." Officer Kennison then "grabbed his arm" after appellant's hand had entered his pocket because the officer thought he "might have a gun or knife or something on him." The officer then "searched that pocket" and found a six and one-half inch pocket knife with a three-inch blade. Appellant was then told that he was under arrest for carrying a concealed weapon, and when further searched there was found on his person a syringe, a hypodermic needle, some pills, a white substance later identified as amphetamine, and some cotton and tinfoil.

The motion to suppress is not set out in the transcript. The knife was not offered in evidence at the trial, but the other items were offered and received in evidence over the objection of appellant that they had been obtained as the result of an unlawful search and seizure.

An arrest by a police officer of the City of St. Louis without a warrant is authorized by law when the police officer has reasonable grounds to believe that an offense against the law has been committed, State v. Jefferson, Mo., 391 S.W.2d 885,

888, or when the police officer has reasonable grounds to believe that a person intends to commit a breach of the peace. Section 84.090, RSMo 1959, V.A.M.S. When a person has been lawfully arrested, a search without a warrant may be made of the person. State v. Vollmar, Mo., 389 S.W.2d 20, 25. A person may be said to be under arrest from the moment the police officer takes control of his movements. § 544.180, RSMo 1959, V.A.M.S.; State v. Stokes, Mo., 387 S.W.2d 518, 522. In this case without reason or provocation, at the approach of the police officers appellant "went for his trouser pocket." This is a term well known in police circles as meaning that appellant suddenly reached into his pocket with the appearance of grabbing for for a weapon. From this act the officers reasonably could assume that appellant intended to attack them or otherwise commit a breach of the peace. See Restatement of Torts, § 116 as to what constitutes a breach of the peace. It has universally been held when the issue has been presented that when the overt acts of a person and the surrounding circumstances are such as reasonably to indicate to the peace officer a threatened breach of the peace, a lawful arrest may be made. 6 C.J.S. Arrest § 6, p. 592; Hughes v. State, 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639; Pavish v. Meyers, 129 Wash. 605, 225 P. 633, 34 A.L.R. 561; United States v. Haskins, D.C., 213 F.Supp. 551; Price v. State, 227 Md. 28, 175 A.2d 11; Cave v. Cooley, 48 N.M. 478, 152 P.2d 886; State v. Mobley, 240 N.C. 476, 83 S.E. 2d 100; Morrison v. State, 192 Tenn. 48, 237 S.W.2d 548; Spurlock, Arrest in Missouri, 29 U. of K. C. Law Rev. at pp. 168–169. Here the officers were authorized to act when appellant turned toward them and without provocation or reason engaged in an act which reasonably would give the impression that he intended to commit a breach of the peace. It would be a most unreasonable and unrealistic rule that would result in peace officers not being able to protect themselves in such circumstances and make an arrest and search for the discovery of weapons. Appellant in his argument overlooks this, and he asserts that the only thing done by him was to look into an automobile. Starting with this erroneous factual statement he arrives at an erroneous result. The knife was found as the result of a lawful search, and the other items were found either as a continuation of that lawful search, or as the result of a new search based on another lawful arrest for carrying a concealed weapon. The trial court did not err in overruling the motion to suppress, and the items were not erroneously admitted into evidence on the basis that they were obtained by an unlawful search and seizure.

Appellant asserts that there is no substantial evidence to support the verdict because "the State failed to prove by substantial evidence that appellant did not have possession of the [amphetamine] for medical purposes upon written prescription of a licensed physician or upon personal dispensation by a licensed pharmacist."

Section 195.240 provides that the possession of any drug designated by the division of health to be a barbiturate or stimulant (and it is admitted that amphetamine has been so designated) is unlawful "except in the usual course of business or practice, or in the performance of their official duties by the following persons: * * * (7) Persons using for medical purposes upon the written prescription or personal dispensation by a person licensed under the provisions of chapters 332 [dentists], 334 [practitioners of medicine], 338 [pharmacists], and 340 [veterinarians]." Appellant admitted that at the time of his arrest he possessed amphetamine. However, he stated that he had obtained it from the West End Pharmacy with a prescription given to him by Dr. H. D. Erwin. He further stated that in May 1964 Dr. Erwin had given him a "refillable prescription" for amphetamine, and that he had seen Dr. Erwin professionally three or four times at his office. The police officer testified that the amphetamine was found on appellant's person in a "white vial" on which there was no label. Appellant stated that there was no

label because he had received the vial of amphetamine from the West End Pharmacy with "the label * * * connected on the bottle with the rubber band, the rubber band slipped off, the label slipped off also," but that the label was in his pocket when the officers searched him. Dr. Erwin testified that he had seen appellant on only one occasion, and that was on April 6, 1964. At that time he gave appellant a prescription, which was not refillable, for "powder amphetamine hydrochloride, one-half an ounce," with instructions to take "one-fourth teaspoonful in water, 7:00 a. m. and 2:00 p. m." and to be taken by mouth, and that there would have been about fifteen "fourths of a teaspoon" in the prescription. Appellant testified that he took amphetamine "orally, intravenous, or intramuscular," that he used the hypodermic needle found on his person to inject amphetamine, that Dr. Erwin did not tell him "directly" to inject amphetamine into his vein, but had asked him if he "knew how to inject" himself and that he had said that he did.

■ From this evidence the jury could reasonably find that appellant did not possess the amphetamine pursuant to a prescription from a doctor. He had received the prescription, according to him in May 1964, and according to Dr. Erwin in April 1964, and the amount of amphetamine received would have lasted less than one week when taken according to the directions of the doctor. However, one year later when arrested he had on his person an amount of amphetamine substantially equal to the amount called for in the prescription, and appellant admitted that he had regularly used amphetamine, not in the manner prescribed by the doctor, but by use of a hypodermic needle. The possession of amphetamine was admitted. It was an issue of fact for the jury whether the possession was pursuant to a prescription by a doctor, and the jury found that it was not.

■ Appellant next asserts prejudicial error resulted when the trial court refused "to allow the defendant to cross-examine the arresting police officers as to their conversation with defendant at the time of the arrest beyond the one question allowed by the court." This point is insufficient in that it does not reveal why appellant contends the ruling was improper. However, in the argument portion of the brief appellant refers to ten pages in the transcript. We find there that the trial court permitted appellant's counsel to ask the arresting officers if appellant told them that he had amphetamine in his possession, but the trial court sustained objections to a question as to what appellant said after being told that he was under arrest for carrying a concealed weapon, and to the question of what appellant said as to where he obtained the amphetamine. The court also indicated generally that questions as to what appellant said would not be permitted because they would be self-serving. Appellant made no offer of proof, and for that reason we cannot determine that the answer to the question desired to be asked would have been admissible. Appellant cites State v. Hamilton, Mo., 310 S.W.2d 906, to the effect that it is unnecessary to make a formal offer of proof "where the question itself discloses the materiality of the evidence." We do not question that rule. Appellant argues that what appellant said would be a part of the res gestae. However, "Ordinarily, the acts, conduct, and statements of accused at the time that he surrendered or was arrested, or after he was arrested, are so separated in time, place, or circumstance from the commission of the offense as to lack the spontaneity, necessary to make them a part of the res gestae; but they are admissible as part of the res gestae under some circumstances, as where the arrest was made or attempted shortly after the commission of the offense and the acts or statements were done or made while the mind was still acting under the exciting cause of the occurrence." 22A C.J.S. Criminal Law § 667, p. 684. In this case appellant was charged with possession of amphetamine, and when arrested he was found to be in possession. Appellant likens this to an arrest for the possession of stolen property, and cites

State v. Jacobs, 133 Mo.App. 182, 113 S.W. 244. There statements of the defendant at the time of his arrest which would have explained the possession of *recently* stolen property were held to have been improperly excluded. The court pointed out that "if some considerable time has elapsed after the property is discovered in possession of the accused, and he is informed of the suspicion attached to his possession, such declarations in his own interest are excluded as self-serving, and not of the res gestae, on the theory that he has had ample time to concoct or contrive a story in his own interest tending to mislead or conceal the true fact." We consider the applicable rule to be that stated in the paragraph following the quotation above from 22A C.J.S. Criminal Law § 667. "Evidence of a statement or declaration of accused in regard to the property which he is charged with stealing is admissible when the statement was made at or about the time the property was taken or immediately on discovery, as a part of the res gestae, but it is not admissible in accused's behalf as res gestae where sufficient time has elapsed for him to reflect and fabricate an explanation." Here the possession of the amphetamine was a continuing offense, and this is not a situation where upon the commission of the offense there was not sufficient time to reflect and fabricate an explanation for the possession. Appellant has confused the res gestae of the arrest with the res gestae of the offense. In the absence of a showing, by an offer of proof or otherwise, that the statements of appellant made at the time of arrest were of such nature that he did not have sufficient time to reflect and fabricate an explanation of his possession of amphetamine, we cannot now rule on appeal that the ruling of the trial court was improper.

 The final point of appellant is that the trial court erred in "overruling defendant's motion for a mistrial because of the improper and prejudicial argument by the prosecuting attorney in which he implied that defendant had suppressed evidence and was responsible for the absence from the court of the witness B. J. Holbert." There was no motion for a mistrial made at any time during oral argument to the jury. After the jury had retired and started its deliberations counsel for defendant said this: "I want to withdraw a juror and to declare a mistrial because of improper argument of the Circuit Attorney in the reply portion. First, his argument on the amphetamine and taking the role of a doctor and testifying in effect and seeking to prejudice the jury thereby, in which I had no opportunity to reply; and second because of his stating that the burden on us was to prove alibi; we never pleaded alibi; that was not our defense at all and which has been to mislead and confuse the jury." It is thus apparent that the basis for the request for the mistrial made after the jury had retired is not the basis of the point now advanced to this court, and no request for a mistrial was ever made on the basis that the state's attorney implied that appellant had suppressed evidence and was responsible for the absence of witness Holbert. For this reason there is no ruling of the trial court before this court for review. In addition, we have examined the argument pertaining to the absence of witness Holbert to determine if it constitutes plain error within the meaning of Criminal Rule 27.20(c), V.A.M.R., and, without further elaboration, we rule that it clearly does not.

We have examined the record as required by Criminal Rules 28.02 and 28.08, V.A.M.R., and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.