**STATE of Missouri, Respondent,**

v.

**Andrew CAGE, Appellant.**

**No. 54449.**

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Martin J. Toft, St. Louis, for appellant.

PRITCHARD, Commissioner.

Appellant was convicted by the verdict of a jury of the crime of possession of a drug, amphetamine sulfate. Allegations were made in the information of five prior felony convictions. With counsel, appellant went over the documentary evidence of prior convictions and agreed that he was the same person as alleged, which the court found. Punishment was assessed by the court at six years imprisonment, which sentence was imposed after appellant's motion for new trial was overruled and allocution had.

The principal question is whether appellant's motion to suppress the evidence of the amphetamine bottle should have been sustained upon his asserted ground (in Point I) that his arrest was unlawful and the search of the automobile and the seizure of the amphetamine bottle was in violation of Art. I, § 15, Const. Mo.1945, V.

A.M.S., and the Fourth Amendment of the Constitution of the United States.

Police officer Robert Loehr, a detective assigned to the Narcotics Department of the St. Louis Metropolitan Police Department, was riding with officer Jones and Federal Narcotics agent Rutledge in an unmarked police car. Near the intersection of Sarah Street and Enright Avenue, an area known to the officers for the sale of narcotics, there was observed a 1963 Oldsmobile stopped and parked at the curb. Officer Jones recognized the person sitting in the driver's seat as Morris Williams (known as Kidney Stew) from 100 feet away. Also observed were two men leaning on the car, and after the police officers stopped their car and got out these two men hurriedly walked away. Loehr approached the Oldsmobile on its right side, Jones on its left. When Loehr was within five feet of the Oldsmobile, and after the two men walked away, he saw and recognized appellant as a known narcotics user (as testified to on the pre-trial motion to suppress evidence). Appellant was then holding a vial, with a white plastic top, between the index finger and the thumb of his right hand. As Loehr walked over to the car appellant threw the vial on the floor. He had his left hand up to his mouth and was throwing something in his mouth. Loehr then told appellant he was under arrest for illegal possession of a drug, opened the door and asked him to get out. Loehr grabbed appellant by the throat saying, "Stop whatever you're putting in your mouth, going down the throat."

Loehr testified further on the pre-trial hearing that the thing which prompted him to stop near the parked Oldsmobile was that it was a known corner for the sale of narcotics, "and all the subjects gathered around the car, and all the guys being known drug addicts." It was his purpose to see why they were all gathered around there. Loehr did not know appellant was in the car until he stopped and walked up to it. He had no warrant for arrest. He

did know "Kidney Stew and Buddha, who is Leonard Gibson."

Officer Jones, after he saw and recognized Morris Williams from 100 feet away at the intersection of Enright and Sarah, "a known hangout for drug users and drug salesmen," did not (then) know a crime was being committed "but there was a good possibility of one being committed due to the fact of this subject and this location." His reason for pulling up behind the car was a suspicion that there might be a crime committed. He thought there were probably some drug sales going on, but did not see any, and had "made eleven cases off this corner, and I believed there was still some more activity there." He saw the two subjects hurriedly walk away from the car as they approached. It is a common practice used by dope pushers to pull up in a car and the customer runs over to the car, makes the change and leaves quickly. Jones had a reasonable suspicion (of narcotic sales) by reason of the men leaving the car. He had never seen appellant before; he had no warrant for his arrest; and had no reason to believe he was a known narcotic user. Jones had Kidney Stew get out of the car, gave him a frisk, and then arrested him for "Suspected of violation of narcotics, potent drugs, narcotics." He had seen appellant with the cap and bottle in his hands and saw him bend over and lay them down. After Jones searched Kidney Stew he searched the front seat of the car and found on the right front side a clear plastic vial, partially open, with a white powder in it. He took the vial and the white powder to the police laboratory where Cordell Brown tested it and found the powder to be 0.28 grams of amphetamine sulfate.

Appellant, on the pre-trial hearing, denied having the bottle in his possession. He had a small bottle like a mayonnaise jar in his left hand (apparently containing gin) which Loehr "knocked over" appellant when he grabbed him by the throat. It was not light on the corner of Sarah and Enright and, as the police car pulled be-

hind the car (owned by Stewart) that appellant was in, one man said, "There is Loehr and Jones' car." Before they got to the police station the officers never did tell them they were under arrest.

It is here argued, "It is appellant's contention that once the police officers had taken up position on each side of the suspect vehicle, with its occupants inside, the arrest of *all* of the parties in the car took place. No one could leave the presence of the police officers and, in effect, the car and all its occupants were in the control of the police. State v. Sampson, Mo., 408 S.W.2d 84, 87 [3]; V.A.M.S., § 544.180. We contend, therefore, that Andrew Cage was arrested before he allegedly took any evasive action as alleged by the police officers and that his arrest was therefore illegal. The facts point to the conclusion that both policemen arrested all the occupants in the car for no other reason than the fact that it was parked at a city corner at 12:30 in the morning and that two of the car's occupants were known to the police officers. * * * This was not probable cause to arrest anyone. This is particularly true of the defendant, Andrew Cage, *whose presence in the vehicle was unknown at the time.*"

 Appellant's argument ignores the factual situation of the arrest as testified to by officers Loehr and Jones. There was no control exercised by the officers over the occupants of the automobile at or prior to the time the two men hurriedly walked away and when Loehr was about five feet from the car. At this point, had nothing else happened, the occupants of the car were free to go and do as they pleased. But something else then happened. Loehr *then* saw appellant holding the vial, with its white plastic top, in his hand, and as he walked over to the car appellant threw the vial on the floor and was attempting to throw something in his mouth. It was *then,* not before, that there existed a probable cause for the arrest in that a felony offense was being committed in the officer's presence. The facts *then* constituted rea-

sonably trustworthy information within officer Loehr's knowledge to warrant his belief, in reasonable caution, that an offense was being committed. State v. Novak, Mo., 428 S.W.2d 585, 591, and cases cited. Contrary to appellant's further contention, under the evidence, this was a "plain view" case. See State v. Baines, Mo., 394 S.W.2d 312 (cert. den. 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008), where the facts showed that defendant dropped an envelope containing marijuana to the floor in plain view of two officers. It was held that the officer was justified to arrest without warrant one who actually had the possession of marijuana, a felony, within his presence and which he had observed. See also the there cited cases of State v. Jefferson, Mo., 391 S.W.2d 885, 888, and State v. Owens, Mo., 391 S.W.2d 248, 252; and the later cases of State v. Gailes, Mo., 428 S.W.2d 555, 558, and State v. Boykins, Mo., 434 S.W.2d 484, 486. There was here no *search* for articles not in plain view of the officers. State v. Boykins, supra. Even if there were, the evidence shows that the automobile did not belong to appellant, hence he has no standing to object to any search. State v. Worley, Mo., 383 S.W.2d 529, 533 [11–13].

State v. Sampson, supra, under its fact, is of no help to appellant, nor is State v. Cuezze, Mo., 249 S.W.2d 373. In the Cuezze case there was no evidence of any crimes committed. The automobile in which defendants were in was searched without warrant, and two pistols, not in plain view, were found under the seat and were seized. In State v. Young, Mo., 425 S.W.2d 177, the only things the officer observed on the floor of the car were a portable electric drill and two screwdrivers held not to be such as constituted a felony (possession of burglary tools) so as to justify the search of the trunk of the car. Point I is overruled.

During the cross-examination after officer Loehr testified that he saw the two men at the side of the car raise up and hurriedly walk away, and then looked at

appellant sitting in the car, the following occurred:

"Q. You didn't know him before that?

"A. He was pointed out to me as a user, but I didn't—

MR. TOFT: Let me approach the Bench and object to that statement.

(Following was at the Bench, out of the hearing of the jury):

MR. TOFT: At this time defendant will make a motion for a mistrial on the ground the witness for the State has injected into this lawsuit evidence which cannot be precluded and which has no support at all.

THE COURT: I think, Mr. Toft, under ordinary circumstances you would be correct but I think your question invited the answer. You are overruled and the motion for a mistrial will be denied."

Appellant says the trial court abused its discretion in failing to grant the requested mistrial because the "volunteered" testimony of officer Loehr had no relation to the crime charged, and constituted an attack on his character which "engendered an uncontrollable and unjust prejudice against the appellant in the minds of the jury and which thereafter prevented the jury from rendering a fair and impartial verdict."

In answer to a question by state's counsel on direct examination as to whether he had known appellant before, Loehr answered, "He had been pointed out to me. I didn't know him personally," without alluding to appellant "as a user." Appellant argues that the state should not be permitted to do on cross-examination that which it would not have been permitted on direct examination, and "In this case the position of the defendant simply stated is (1) the police officer knew the effect that his statement would have and (2) wilfully responded in the manner which would aid in influencing and prejudicing the jury against the defendant."

A similar situation to that here was in the case of State v. Lira, Mo., 372 S.W.2d 80, 82. There an officer made an unresponsive and voluntary answer to a question on cross-examination: "A. Which burglary are you talking about?" Counsel merely asked for a mistrial and discharge of the jury "because of an improper, prejudicial remark made by the witness who knows better," which was overruled. It was asserted on appeal that the unresponsive and voluntary reply of the officer was a comment upon other arrests and crimes for which the defendant was charged but not presently on trial. There was, as here, no request that the trial court instruct the jury to disregard the answer, but merely a requested mistrial. It was said (as was also said in State v. Statler, Mo., 331 S.W.2d 526) that it would have been better for the court to have so instructed the jury on its own motion, but that it was not an abuse of discretion not to have done so, or that he refused to grant the requested mistrial. The prejudicial effect upon the jury in matters such as here presented is for the trial court to determine, it being in a better position to do so than an appellate court. State v. Camper, Mo., 391 S.W.2d 926, in which it is said that the trial court's power in this respect should be exercised only in extraordinary circumstances (State v. James, Mo., 347 S.W.2d 211, 214 [7–10] and cases cited), and that a mistrial should be granted only when the incident is so grievous that its prejudicial effect can be removed in no other way. See also Holt v. State, Mo., 433 S.W.2d 265. As noted, the trial court was not given an opportunity to strike the voluntary answer by a proper motion of counsel. It may not be said as a matter of law, that the trial court abused its discretion in refusing to declare a mistrial. Contrarily, the evidence of appellant's guilt in possessing the amphetamine sulfate is strong and convincing, and it is doubtful that the officer's remark had any effect upon the jury in producing the verdict of guilty. Point II is overruled.

The last point concerns this closing argument of state's counsel:

"Both of these officers, under oath, sworn oath, in this courtroom, swore to you—and I, as an officer of this court, put them on the stand—swore to you they saw this vial in this man's hand. Ladies and gentlemen, one of two things. Either he is guilty of possession of a stimulant drug or they are guilty of perjury.

"MR. TOFT: I object to that line of argument. He knows that's not true. The officers are probably mistaken. He is not willing to admit it.

"THE COURT: I don't think that comment was necessary and I ask you never make a comment like that in this courtroom—it was uncalled for.

"MR. CURRAN: Sorry, I got a little riled up.

"THE COURT: Objection overruled. You may proceed."

 A prosecutor has the right to comment on the evidence and the credibility of witnesses from the state's viewpoint. State v. Sallee, Mo., 436 S.W.2d 246. It was held in State v. Miles, 199 Mo. 530, 98 S.W. 25, that it was not reversible error for the prosecutor to allude to a state's witness as a good man. It was held in State v. Johnson, 351 Mo. 785, 174 S.W.2d 139, 142, to be a fair comment on the evidence, "You know this defendant got on the stand and lied to you gentlemen." See also State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 103 A.L.R. 339, where it was held not improper for an assistant circuit attorney to denounce the testimony of an alibi witness as perjury. Under these cases, the remark of state's counsel was not prejudicially improper. But in any event, any detrimental effect of the argument was removed by the court's rebuke, quite apparently directed to state's counsel and he im-

mediately apologized and acknowledged the court's rebuke. The last point is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.