246 So.2d 621 (1971)
Charles F. SALAS, III, Appellant,
v.
The STATE of Florida, Appellee.
No. 70-930.
District Court of Appeal of Florida, Third District.
April 6, 1971.
Rehearing Denied April 30, 1971.
John J. Quinn, Key West, for appellant.
Robert L. Shevin, Atty. Gen., and Alan M. Medof, Asst. Atty. Gen., for appellee.
Before BARKDULL, HENDRY and SWANN, JJ.
PER CURIAM.
Appellant Salas, the defendant below, seeks review of a judgment of conviction and sentence imposed upon him for the illegal possession of an amphetamine.
*622 One evening in May, 1970, two plain clothes detectives entered and inspected a public rest room of a commercial restaurant in Key West which had become known as a scene for illegal drug use. The room had no narcotics paraphernalia in it when they inspected the premises that evening. However, one of the detectives had discovered discarded syringes and a spoon at that location on the day before the arrest here in question. The two officers concealed themselves and observed the area for several minutes; they were not looking for anyone in particular. Appellant and another man entered the ladies' room, even though the men's room was unlocked. After about five minutes, both detectives left their place of concealment, and went to the rest room door and knocked. Appellant and his companion came out and started walking away.
One of the detectives went into the ladies room and found a syringe with a clear fluid inside, which had not been there before, and shouted "Get them," to his partner. They were placed under arrest. There is some evidence in the record that appellant offered some minor resistance to the arrest or that there was a "scuffle" before the challenged action occurring after the arrest took place. Appellant attempted to put two tin-foil packets in his mouth, but one detective put a "choke hold" on appellant, and appellant spat out the tin foil.
These packets, after analysis, proved to contain dextrose amphetamine sulfate drugs. The prosecution, which is the subject of this appeal, was for the illegal possession of such drug.
Testimony at the trial of the cause by one of the arresting officers was that appellant, although he had not been convicted of a narcotics violation, was known to the officer as a known narcotics user. Apparently such knowledge was not based upon first-hand observation but upon police department data or communications to him from informants.
Appellant asserts that the arrest was incident to an illegal search, and not a search incident to a lawful arrest; that the prosecution's expert witness was not an expert for lack of education and training; the information did not charge an offense cognizable under Ch. 404, Fla. Stat., F.S.A.; and that § 404.13 Fla. Stat., F.S.A. violates the prohibition against self-incrimination. We find no reversible error and affirm.
The law is well settled that an arrest must be based upon probable cause. The U.S. Supreme Court, in a case which found probable cause in the arresting officer's relying upon information supplied by an informant, has defined probable cause for arrest as follows:
"Probable cause exists where `the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." [Citations omitted.] Draper v. United States (1959), 358 U.S. 307, 313, 79 S.Ct. 327, 333, 3 L.Ed.2d 327.
Cf. Sibron v. New York (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, 926 and 933 n. 20.
There is no requirement that the arresting officer have sufficient first hand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication either had first hand knowledge or received his information from some person, usually the victim, official source, or eye witness, who it seems reasonable to believe is telling the truth. Daniels v. United States, 129 App.D.C. 250, 393 F.2d 359, 361 (1968); Williams v. United States, 113 App.D.C. 371, 308 F.2d 326, 327 (1962); Smith v. United States, 123 App.D.C. 202, 358 F.2d 833, 835 (1966), cert. den. 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448; People v. Estrada, 234 Cal. App.2d 136, 44 Cal. Rptr. 165, 175-176, 11 A.L.R.3d 1307 (1965).
*623 Chief Justice Warren in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, alluded to the "confrontation on the street between the citizen and the policeman investigating suspicious circumstances," and the potential of "exacerbat[ing] police-community tensions in the crowded centers of our Nation's cities." But, in his words, "the issue is not the abstract propriety of the police conduct, but the admissibility against petitioner of the evidence uncovered by the search and seizure," id. at p. 12, 88 S.Ct. at p. 1875. To the facts in the record before us, we must apply the objective standard of whether the facts available to the officer at the moment of the seizure or the search "`warrant a man of reasonable caution in the belief' that the action taken was appropriate," id. at p. 22, 88 S.Ct. at p. 1880; see also Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. We express the view that in the face of the imminent destruction of evidence after a lawful arrest had been effected, the lower court was not in error in refusing to suppress, on constitutional grounds, the evidence which was the subject of the attempted destruction. State v. Cage, 452 S.W.2d 125 (Mo. 1970); cf. discussion in Boim v. State, Fla.App. 1967, 194 So.2d 313, 315-316, decided before Chimel, supra, and Terry, supra.
We find little support in the record for the contention that the State's expert witness was not qualified as to his educational background. Assuming such argument has merit, an expert may be qualified by his experience, skill, or independent study of a particular field. E.g., McCormick, Evidence § 13, pp. 28-29 (1954); Rule 7-02, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates (March 1969), 46 F.R.D. 161, 314-315.
The information charged possession of "an amphetamine, or central nervous [sic, system] stimulant to-wit: Methadrine * * *" Methadrine is the trade name of an amphetamine. A "central nervous system stimulant" such as "amphetamine," "methamphetamine," and "methylphenidylacetate," § 404.01, Fla. Stat., F.S.A., is proscribed by Ch. 404, Fla. Stat., F.S.A. See Randle v. California State Board of Pharmacy, 240 Cal. App.2d 254, 49 Cal. Rptr. 485, 487, 17 A.L.R.3d 1398 (1966).
We express the view that § 404.13, Fla. Stat., F.S.A. does not violate the prohibition in the Florida and Federal Constitutions against self-incrimination. Relying in part upon a similar provision in a related drug control statute, Ch. 398 Fla. Stat., F.S.A. the Florida Supreme Court noted that Florida decisions have upheld criminal statutes requiring that the defendant negative certain exceptions in criminal statutes, State v. Kahler, Fla. 1970, 232 So.2d 166.
For the reason that reversible error has not been demonstrated, we hold that the judgment and sentence imposed thereupon should be affirmed.
Affirmed.