HENDRY, Judge.
Appellant seeks review of a conviction for second degree murder following a plea of nolo contendere. He expressly reserved his right to appeal after the trial court denied a motion to suppress incriminating statements and tangible evidence.
Six points have been raised by the appellant seeking to overturn the trial judge’s conclusion that the police had not acted improperly or in violation of the appellant’s constitutional rights and accordingly denying the motion to suppress.
Each point has been carefully considered in light of the briefs and the record of the evidentiary hearing held on the motion to suppress. It is our conclusion that appellant has not demonstrated any reversible error.
The facts show that the appellant was arrested at his apartment some five or six hours after the victim, Alex Scalco, was shot to death at a Big Daddy’s Lounge in Miami at 3 o’clock in the morning.
The City of Miami Police Department responded to a call concerning the fatal *247 shooting, and following an investigation at the scene, the police contacted one Michael Ford.
From Ford, the police learned that he and three others were involved in an altercation apparently with the victim Scalco earlier in the evening.
Thereafter, Ford and two of his companions, Polk Cotton and; John Barbasa, proceeded to the appellant’s residence where the four men discussed returning to Big Daddy’s in order to continue their feud.
However, Ford informed the police that when these discussions turned to the question of a gun and to a fight involving shooting, he (Ford) opted out, and he asked to be dropped off at his house.
The record further discloses that the description of three men allegedly involved in the shooting of Scalco which the police managed to obtain at the scene basically matched that of Cotton, Barbasa, and the appellant Santiago.
In sum, after conducting an investigation at the scene and then talking to Ford, the police, in the words of defense counsel, “knew who the players were but you didn’t know who the trigger man was.”
Based on this information, the police sought and took into custody first Cotton and Barbasa and then the appellant.
It is appellant’s contention that his arrest, obtained without a warrant, was legally defective because it was made without probable cause. Therefore, appellant invokes the “fruit of the poisonous tree” doctrine, arguing that all subsequent statements and tangible evidence must be suppressed.
We hold that appellant’s contention is unacceptable because he has not demonstrated either before the trial court or this court that the police lacked probable cause to arrest him. E. g., State v. Outten, Fla.1968, 206 So.2d 392; Russell v. State, Fla.App.1972, 266 So.2d 92; Salas v. State, Fla.App.1971, 246 So.2d 621; Coykendall v. State, Fla.App.1970, 230 So.2d 702.
Next, we express the view that appellant’s contention concerning denial of counsel is without merit.
Appellant relies on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The record shows that after the police had read the Miranda warnings at the police station, appellant asked to call his lawyer, Gino Negretti. He was permitted to make the phone call, but apparently he was unable to reach Negretti.
Thereafter, the appellant gave the police a confession to the crime. Apparently while he was giving this statement, Negret-ti called the homicide office attempting to speak to the appellant. Negretti testified that a lady whom he could not identify refused to interrupt the statement being taken.
He further testified that he arrived at the station 15 minutes later, apparently after the statement was completed but before the appellant signed it. There is nothing in the record to indicate that Negretti was not given immediate access to the appellant at the station, and he testified that he did not permit the appellant to sign the confession.
Negretti testified that had the interrogation been interrupted when he telephoned originally, he “guaranteed” that appellant would not have confessed.
Nevertheless, our review of the record does not show conduct on the part of the police which was condemned in Escobe-do or Miranda. It is our view that the incriminating statements were made voluntarily. See, Fowler v. State, Fla.1972, 263 So.2d 202; Dempsey v. State, Fla.App.1970, 238 So.2d 446.
Finally, no reversible error has been shown in connection with the trial court’s refusal to suppress tangible evidence consisting of bullets (.380 caliber ammunition) *248 found in appellant’s apartment and a disassembled gun to which the appellant voluntarily lead the police after he was placed under arrest.
Even accepting appellant’s view that the police extended their search of his apartment beyond permissible limits [see, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Fla.Stat. § 901.21, F.S.A.], the record shows that at least some of the ammunition was within the plain view of the police officers making the arrest. Therefore, we conclude that any error in this regard was harmless.
With respect to the gun, we think it is clear from the record that the police obtained it through the voluntary cooperation of the appellant. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Custer, Fla.App. 1971, 251 So.2d 287.
Therefore, for the reasons stated and upon the authorities cited, the judgment and sentence under review is affirmed.
Affirmed.