[EDITORS' NOTE: THIS OPINION HAS BEEN WITHDRAWN.]
FILED 192
Honorable George E. Murray State Senator, District 26 763 South New Ballas Road Creve Coeur, Missouri 63141
Dear Senator Murray:
This is in response to your request for an opinion from this office as follows:
 "Under the terms and provisions of Act 22, Second Regular Session, 1976, (House Bill 1390), does a police officer of St. Louis County or a police officer of any city, town, or village located therein, have authority to arrest a person whom he has reasonable cause to believe is committing or has committed a misdemeanor as defined by the ordinances of St. Louis County or the ordinances of the respective city, town, or village thereof?"
Act 22, Second Regular Session, 78th General Assembly (House Bill No. 1390), provides in part:
 "1. Any county police officer of any first class charter county which does not contain any part of a city with a population of over four hundred thousand, and any police officer of any city, town, or village located within such a county, . . . may, within the boundaries of the political entity from which he derives his authority, arrest any person whom he has reasonable cause to believe is committing or has committed a misdemeanor."
The language of the act does not expressly authorize arrests of persons upon reasonable cause based on violations of county and municipal ordinances. Thus, the problem presented is one of statutory construction: Whether or not the General Assembly intended the term "misdemeanor" contained in Act 22 (House Bill No. 1390) to encompass violations of county and municipal ordinances.
To answer this question effectively, it should be noted initially that Act 22 (House Bill No. 1390) abrogates the common law regarding the authority of police officers to make arrests. At common law, a police officer could arrest any person whom he had reasonable cause to believe had committed a felony, but could only arrest for misdemeanor offenses committed in the officer's presence. In State v. Gartland, 263 S.W. 165, 169 (Mo. 1924), it was held that an offense is committed in an officer's presence only when the officer has actual knowledge that the offense is being committed, i.e., when the officer witnesses the perpetration of the offense. In this regard, it is generally accepted that police officers also have the authority to arrest for violations of county and municipal ordinances, but only when such violations are committed in the actual presence of the officers. By granting police officers authority to arrest for misdemeanors on "reasonable cause to believe," Act 22 (House Bill No. 1390), is a statute in derogation of common law. Therefore, in determining the legislative intent of Act 22 (House Bill No. 1390), the act must be strictly construed.
It is our opinion that the term "misdemeanor" contained in Act 22 (House Bill No. 1390) does not encompass violations of county and municipal ordinances; and, therefore, said act does not authorize arrests of persons upon reasonable cause based on violations of county and municipal ordinances.
Section 556.040, V.A.M.S., sets forth the definition of "misdemeanor," as that term is used in the Revised Statutes of Missouri:
 "The term `misdemeanor,' as used in this or any other statute, shall be construed as including every offense punishable only by fine or imprisonment in a county jail, or both."
In City of Ava v. Yost, 375 S.W.2d 884, 886 (Spr.Ct.App. 1964), the court declared:
 "The violation of a city ordinance is not a crime in a constitutional sense, nor a misdemeanor under our criminal code. . . ."
This statement was based on the general premise that actions to enforce municipal ordinances are civil proceedings to recover a penalty, and not prosecutions for crime, although such actions often assume certain aspects of criminal procedure.
In City of Ferguson v. Nelson, 438 S.W.2d 249 (Mo. 1969), the Missouri Supreme Court reinforced the proposition that violations of city ordinances are not "misdemeanors" under the Missouri statutory scheme. The court confronted the question of whether Section 546.830, V.A.M.S., applied to convictions of municipal ordinances. Section 546.830, V.A.M.S., provides:
 "Whenever any defendant shall, on a conviction, be sentenced to imprisonment in a county jail, or to pay a fine, he shall be imprisoned until the sentence is fully complied with and all costs paid, unless he be sooner discharged in the manner provided in section 546.850."
The court held that the statute was a substantive criminal statute and was meant therefore to apply only to prosecutions for state felonies or misdemeanors. The court further stated that the civil nature of municipal ordinance proceedings confirmed the conclusion of the court that convictions for violations of municipal ordinances are not encompassed by Section 546.380, V.A.M.S.
With respect to violations of ordinances of St. Louis County, Section 66.140, V.A.M.S., sets forth the procedure to be followed when violations of county ordinances are prosecuted:
 "Unless in conflict with the provisions of this chapter, all provisions of law relating to proceedings before magistrate courts in misdemeanors shall apply to actions before such courts involving the violation of county ordinances; except that a judgment establishing that an individual has violated a county ordinance shall not be deemed to be a conviction for a misdemeanor within the meaning of section 556.040, RSMo."
It can be inferred from the prefatory language of Section66.140, V.A.M.S., that the General Assembly did not consider a violation of a county ordinance a "misdemeanor" as that term is used in the criminal statutes of Missouri and the express exemption of county ordinance violations from Section 556.040, V.A.M.S., provided for in Section 66.140, V.A.M.S., further impels that conclusion.
General rules of statutory construction are helpful in determining the legislative intent of new statutes. The Missouri Supreme Court in State ex rel. Schwab v. Riley, 417 S.W.2d 1, 4 (Mo. Banc 1967), endorsed a general rule of statutory construction that statutes of similar subject matter should be considered when construing an ambiguous statute and added that the rule applies even though the statutes are found in different chapters and were enacted at different times. In that regard, Act 22 (House Bill No. 1390) and Sections 84.090 and 84.710, V.A.M.S., are statutes of similar subject matter, as all three statutes concern the subject of police authority to arrest persons based on a reasonable belief that a violation of law has been committed. Therefore, in determining the intent of the General Assembly with respect to Act 22 (House Bill No. 1390), it is helpful to examine the language and history of Sections 84.090 and 84.710, V.A.M.S.
Section 84.710, V.A.M.S., authorizes police officers in Kansas City:
 ". . . to arrest, on view, any person they see violating or whom they have reason to suspect of having violated any law of the state or ordinance of the city. . ." (Emphasis supplied)
In construing the power of arrest granted police officers of Kansas City under the statute, the court in Kansas City v. Mathis,409 S.W.2d 280, 286-287 (K.C.Mo.App. 1966), stated:
 "It is elementary that under certain circumstances a peace officer may make a lawful arrest without a warrant. The general rule, originating in the common law, is that he may arrest without a warrant any person whom he has reasonable cause to believe has committed a felony and any one committing a misdemeanor in his presence. . . . And, this rule has been liberalized by Sections 84.440
and 84.710, RSMo 1959, V.A.M.S. in that police officers of Kansas City, Missouri, are thereby authorized to arrest without warrant any person whom they have reasonable ground to believe has committed either a felony or misdemeanor or has violated any ordinance of the city, even though such an offense does not occur in the presence of the officer. . . ." (Emphasis supplied)
Section 84.090, V.A.M.S., applies to police officers of the City of St. Louis and provides:
 "The duties of the boards of police . . . shall be as follows: They shall, at all times of the day and night, within the boundaries of said cities, . . .
 (1) Preserve the public peace, prevent crime and arrest offenders;
* * *
 (10) In case they shall have any reason to believe that any person within said cities intends to commit any breaches of the peace,
or violation of the law or order beyond the city limits, any person charged with the commission of crime in said cities and against whom criminal process shall have issued, may be arrested upon the same in any part of this state by the police force created or authorized by sections 84.010 to 84.340; . . ." (Emphasis supplied)
The Missouri Supreme Court has held that Section 84.090, V.A.M.S., authorizes police officers of the City of St. Louis to arrest any person without a warrant when the officers have reasonable grounds to believe that any offense has been committed. Statev. sampson, 408 S.W.2d 84, 86-87 (Mo. 1966).
In construing Act 22 (House Bill No. 1390), it must be presumed that the General Assembly was aware of the statutory language of Sections84.090 and 84.710, V.A.M.S., and familiar with the interpretation given that statutory language by the Missouri appellate courts. In State ex rel. Hilbert v. Glaves, 186 S.W. 685, 687
(Mo.Banc 1916), the Missouri Supreme Court considered the meaning of the word "purpose" in a new statute in light of statutes inpari materia which contained different terminology that had already been interpreted. The court found it significant that the legislature had avoided the use of the older terminology in the new statute and rejected the contention that the term "purpose" afforded the same meaning as the terminology used in the older statutes. Consequently, it logically follows in the current instance that had the General Assembly intended to grant authority to arrest for county and municipal ordinance violations committed outside the presence of police officers upon reasonable cause under Act 22 (House Bill No. 1390), it could have utilized the language contained in Sections 84.090 or 84.710, V.A.M.S., which had been previously construed by Missouri appellate courts to include such authority. The General Assembly did not utilize such language, but specifically used the term "misdemeanor" in the new act. It must, therefore, be presumed that the legislature did not intend to grant the authority to arrest for county and municipal ordinance violations committed outside the presence of police officers upon reasonable cause under Act 22 (House Bill No. 1390).
CONCLUSION
Therefore, it is the opinion of this office that under the terms and provisions of Act 22; Second Regular Session, 78th General Assembly (House Bill No. 1390), a police officer of St. Louis County or a police officer of any city, town, or village therein does not have the authority to arrest any person whom he has reason to believe is committing or has committed a violation of a county or municipal ordinance outside of the presence of the officer.
The foregoing opinion, which I hereby approve, was prepared by my assistant, David L. Baylard.
Yours very truly,
 JOHN C. DANFORTH Attorney General